MARY ZOE ALWARD, Administratrix, v. THOMAS F. OAKES and Others, Receivers.[1]

December 13, 1895.

Nos. 9623—(210).

**Impeachment of Witness—Collateral Matters.**

While the general rule is that a witness cannot, for the purpose of impeaching his credibility, be cross-examined as to collateral matters, yet his feelings, and his disposition to conceal or pervert the truth, in the particular suit in which he is called, are not collateral matters within the meaning of the rule.

**Same—Corrupt Disposition.**

Certain letters, written by a witness, in reference to the matters involved in the suit in which he was called, considered, and *held* admissible for the purpose of impeachment, because tending to show a corrupt disposition, for a pecuniary consideration, to conceal or pervert the truth in the matters as to which he testified.

[1] Reported in 65 N. W. 270.

Appeal by plaintiff from an order of the district court for St. Louis county, Moer, J., denying a motion for a new trial. Reversed.

The two letters referred to in the opinion, which were addressed to plaintiff and signed by the witness Rice were in the following terms:

### Exhibit C.

"In reply to yours of the 18th will say, your husband, Mr. Alward, got on to my train at Detroit, Minn., and paid his fare to Staples, and when we arrived at Luce Station we met a train and also got orders there and while I was at the telegraph office getting orders the train following me came in to town never slacking speed and ran into my train and Mr. Alward was I suppose asleep and the rear brakeman did not have time enough to get him out of caboose. This is all the information I can give, but will say this much that you have a good case against the Northern Pacific Railroad Company and anything I can help you in will readily do."

### Exhibit D.

"No doubt you are anxious to hear from me, but it is this way with me. I have no other way to earn my living than railroading and unless you could make it an object to me I don't feel like giving much information, as the company will blackball me all over the country if I go against them. Of course I am the only one that knows just how this accident happened, and under the circumstances my knowledge should be worth something. Will you kindly tell me when the suit comes off and at what place, and also the amount sued for, then we may be able to come to some terms. Hoping to hear from you soon, I am."

*H. H. Hawkins*, *Alpheus Woodward* and *Eugene F. Lane*, for appellant.

*C. W. Bunn* and *L. T. Chamberlain*, for respondents.

MITCHELL, J. This was an action under the statute[2] to recover damages for the death of plaintiff's intestate, caused by the negligence of the defendants. The two important allegations of the complaint were: First, that the decedent was a passenger on the railroad operated by the defendants; and, second, that while such passenger he was killed by a collision of trains, caused by the negligence of defendants' servants. Both of these allegations were denied by the answer.

[2] G. S. 1894, § 5913.

It appeared from the evidence that at the time of his death the deceased was riding on a freight train; also that the rule of the railway company was that passengers were not allowed on such trains, unless special permission was obtained from the officials of the road. The evidence also was that when the train on which the intestate was riding was standing on the main track at a station while the conductor was in the station obtaining orders, another train, operated by defendants, came up from behind at a high rate of speed, and collided with the standing train, destroying the caboose in which the intestate was riding, thereby causing his death. The defendants then introduced one Rice, the conductor of the freight on which the intestate was riding, who testified that the intestate applied to him at Detroit for carriage from that point to Staples; that he informed him that he was not allowed to take passengers on that train; that it was against the rules of the company; but that, after much solicitation on part of the intestate, he finally consented to let him go on his train, and told him to go into the caboose; that the intestate did so, and that after the train started he collected fare from him. Upon cross-examination witness was shown two letters (Exhibits C and D), purporting to have been written by him to plaintiff after the accident in reference to the matter. The witness admitted that he wrote the letters, and thereupon the plaintiff offered them in evidence as part of the cross-examination of the witness. The court, on defendants' objection, excluded them; and this is assigned as error.

That some of defendants' servants were guilty of negligence which caused the collision was almost conclusively established by the evidence. Hence, a vital, and perhaps the decisive, question in the case was whether the intestate was a "passenger" on defendants' train; and in determining this the important question was whether the deceased, before he took passage on the train, was informed of the fact that it was against the rules of the company, and that the conductor had no authority, to carry passengers on that train. So far as appears, the intestate and the conductor were the only parties who knew what passed between them; and, as the former was dead, the whole matter rested in the breast of the conductor. Moreover, while it appeared that the witness was no longer in the employment of the defendants, yet he would naturally be inclined to excuse himself for violating the rules of the road.

Under these circumstances, we think the letters, and particularly Exhibit D, should have been admitted for the purpose of impeaching the witness. Of course, we recognize the general rules that in impeaching the credit of a witness the examination must be confined to his general reputation, and not be permitted as to particular facts; also that he cannot be cross-examined as to collateral matters. But the feelings of a witness, and his disposition to tell or conceal the truth in the particular suit in which he is called to testify, are always admissible, not being collateral matters within the meaning of the rule.

In one of these letters the witness evinced a corrupt disposition to make his testimony in this case depend upon the pecuniary or other valuable consideration that might be offered him. And while his mere opinion as to whether or not the plantiff had "a good case" against the railroad was immaterial, it is a material fact that in the other letter, while purporting to state the facts to the plaintiff, the witness made no mention of the vital fact to which he testified, viz. that he told the intestate that it was against the rules of the company, and that he had no authority to carry passengers on that train. A trial court has unquestionably considerable discretion in determining how far the cross-examination of a witness may be extended for the purpose of his impeachment or otherwise testing the credibility of his testimony; but these letters (especially Exhibit D) went so directly to the disposition of the witness to conceal or pervert the truth in this case that we think the court erred in not admitting them in evidence, and the prejudice resulting from this error is enhanced by the peculiar condition of things in this case already alluded to.

As a new trial must be ordered, it is unnecessary to consider any other questions. To remove a misapprehension under which counsel for the plaintiff seem to be laboring, we will add that, if it was against the rules of the railway company to carry passengers on this train, and the conductor had no authority to relax that rule,—in other words, if the conductor had no authority to carry passengers on that train, and the deceased was informed of that fact before he took passage,—then there was no relation of carrier and passenger between him and the defendants, and they owed him no duty as a passenger. If he induced the conductor to permit him to ride on the train knowing that it was against the rules of the company, and that in permitting him to take passage the conductor was acting without authority, and in

disobedience of his orders, he acquired none of the peculiar or special rights of a passenger. This is the settled law of this, and we think of every other, court which has ever passed on the question. McVeety v. St. Paul, M. & M. Ry. Co., 45 Minn. 268, 47 N. W. 809. If such were the facts, a recovery must be had, if at all, on some other ground than that the relation of passenger and carrier existed between the parties.

Order reversed.