## RUTH ORR v. STATE.

No. A-3884.    Opinion Filed April 15, 1922.
(205 Pac. 941.)

(Syllabus.)

1.    **Witnesses—Cross-Examination of Prosecuting Witness to Show Malice.**—The accused, on cross-examination of the prosecuting witness, may show, if he can, the malice and ill feeling of the witness growing out of collateral matters.

2.    **Appeal and Error—Consideration of Other Irregularities Where Evidence Conflicting and of Doubtful Probative Force.**—Where the evidence supporting the conviction is conflicting and of doubtful probative force, this court will the more carefully consider other irregularities at the trial which, in the abstract, may not ordinarily be prejudicial, in order to ascertain from a consideration of the whole record whether the defendant in fact had a fair trial.

Appeal from County Court, Coal County; F. W. Saunders, Judge.

Ruth Orr was convicted of violating the prohibitory laws of this state and sentenced to 30 days in the county jail and to pay a fine of $50, and she appeals. Reversed and remanded.

C. M. Threadgill, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J. Ruth Orr was by information filed in the county court of Coal county, April 20, 1920, charged with violating the prohibitory laws of this state on March 19, 1920, by selling to C. B. Mathews a half pint of whisky. At the trial C. B. Mathews and Shell Quinton, the only witnesses for the state, testified that they purchased a pint of whisky from the accused at her residence in Coalgate late in the afternoon of the day last mentioned. Mathews testified that it was corn or white whisky, delivered to him in a pint bottle with a glass stopper, for which he paid the accused woman four silver dollars and two half dollars. Quinton testified that it was red whisky, not corn whisky, delivered in a pint bottle with a cork stopper, and that Mathews paid for it with a five dollar bill. Mathews admitted that he had been drinking some before he went to Ruth's house, and both witnesses were placed in jail that night for being drunk and disorderly.

The accused woman testified that she was not at home that afternoon, and that her sick mother was the only person present at her home that afternoon; that the mother reported that two men had been there that afternoon; she denied that she sold these men, or any men, any whisky. Mathews was impeached by several witnesses for the accused, to the effect that his reputation for truth and veracity was bad. One of the impeaching witnesses testified that Mathews was not normal mentally and was a kind of moral degenerate, and a frequent violator of the law. Quinton was a friend of Mathews and not well known, and had no reputation, one way or another.

An effort was made to show that the prosecuting witness, Mathews, was suspected of stealing some jewelry belonging to

the accused woman while at her house in her absence, for which a search warrant had been issued. One of the errors complained of is that the accused was not permitted to show fully the malice and ill feeling of Mathews towards her, growing out of this jewelry theft. On cross-examination of complaining witness Mathews, the following appears:

Q. Didn't Ruth send officers to Centrahoma and have you brought back here and put in jail the next day? A. No. sir; not then.

Q. Was it the next day or after?

Mr. Holland: The state objects to that because it is incompetent, irrelevant, and immaterial.

The Court: Objection sustained.

Q. What did she send for you for?

Mr. Holland: The state objects because it is incompetent, irrelevant, and immartial.

The Court: Objection sustained.

Q. I will ask you if it is not a fact that after you were over at the place where this woman lives, on or about the 19th of March, she didn't charge you with stealing some jewelry and send that same night after you were over there, sent to Centrahoma and have you brought back to Coalgate?

Mr. Holland: The state objects because it is incompetent, irrelevant, and immaterial.

The Court: Objection sustained.

The accused herself attempted to explain this incident as follows:

Q. Did you have any trouble with Charlie Mathews about that time? A. I did.

Q. Tell the court what it was.

Mr. Holland: The state objects to that because it is incompetent, irrelevant, and immaterial.

The Court: Objection overruled.

Q. What trouble did you have with him? A. He stole a pin of mine.

Q. Here is the question I want to get at: What did you do to him? Did you have trouble with the witness?

Mr. Holland: Objected to as incompetent, irrelevant, and immaterial.

The Court: Objection sustained.

Mr. Threadgill: Defendant excepts. Defendant offers to prove by this witness that she had a warrant issued to search and arrest the defendant, believing that he had taken a piece of jewelry that belonged to her.

(No ruling by the court.)

It is well settled that the ill will of a witness towards the accused may be shown on cross-examination, as evidence of bias, affecting the credibility of the witness. A denial of this right is usually prejudicial. The accused had a right to show, if she could, that the prosecuting witness was giving testimony with malicious motives. Henry v. State, 6 Okla. Cr. 432, 119 Pac. 278; Spear v. State, 7 Okla. Cr. 379, 123 Pac. 852; 25 R. C. L. 612-615.

Although no exceptions were taken to instruction No. 5, relating to presumption of innocence and reasonable doubt, this instruction is fundamentally wrong and meaningless.

In the motion for a new trial it was urged that one Neal Winfield, who had moved away and whose whereabouts had not been discovered, would testify that he was with Mathews when he went to defendant's premises at the time charged, and that Shell Quinton was not present, and that Mathews bought no

whisky there. The testimony of Winfield alone might have convinced a jury that the defendant was not guilty. Whether due diligence was made to procure the attendance of this witness does not fully appear.

From the fact that the prosecuting witness was impeached in positive terms, considered in connection with the showing made, indicating malice on the part of the prosecuting witness, and with the ambiguous instruction given and the showing made of newly discovered evidence, we are led to believe that the jury may have been influenced in some extraneous manner to bring in the verdict they did, and we feel that, under all the circumstances in this case, this woman should not be deprived of her liberty on the unsupported, conflicting testimony of witnesses of this character.

The cause is reversed and remanded.

DOYLE, P. J., and MATSON, J., concur.