## RAYMOND A. REYNOLDS v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

June 27, 1930.

No. 27,525.

*Theodore Hollister* and *Lathers & Hoag,* for appellant.
*Crassweller & Crassweller,* for respondent.

STONE, J.

In this action for malicious prosecution defendant had a verdict, and plaintiff appeals from the order denying his motion for a new trial.

For something like 16 months from October, 1925, plaintiff was employed by defendant as a life insurance agent at Duluth. He was soliciting two kinds of insurance, ordinary and industrial. The former was the old line, limited payment life and endowment insurance. Whether the premiums were payable quarterly, semi-

[1] Reported in 231 N. W. 615.

annually, or yearly, the first normally accompanied the application. The industrial insurance was issued in much smaller amounts, and the premiums, payable weekly in sums of from 25 cents to one dollar, were collected by the agent going from house to house. A rule of the company well known to plaintiff is that all industrial policies upon which four weeks' premiums are due, no matter what the circumstances, must be lapsed. Neither the superintendent nor the assistant superintendent is authorized to grant exceptions. At the end of each week plaintiff had to certify to the correctness of his account of collections and that "all policies lapsible by company's rule have been reported and lapsed." In November, 1926, he took from one Walczak an application for ordinary insurance and collected therewith the initial premium of $19.05. In January, 1927, he secured another from one Lundgren and collected the first premium of $53.76. He failed to transmit either application to defendant and made no report of either collection. The result was that in November, 1927, there was started by an agent of defendant a criminal prosecution wherein plaintiff was charged with grand larceny in the second degree. The trial resulted in plaintiff's acquittal. Thereupon he brought this action praying for the recovery of $15,000 damages from defendant for alleged malicious prosecution.

Plaintiff's explanation of his failure to report to defendant the Walczak and Lundgren applications and account for the premiums is that for some time he had been violating the company's rule requiring the lapsing of industrial policies more than four weeks in arrears; that he had used considerable of his own money to carry such policies, and that, running short, he finally resorted to the expedient, when he got the Walczak and Lundgren premiums, of applying them on his "industrial" account. That course of action, he claims, was authorized by defendant's superintendent in charge at Duluth. The compensation of plaintiff as a soliciting agent and of the superintendent depended to some extent upon their success in procuring more than enough new industrial business to offset that which lapsed. As to compensation in that respect they were either

"on increase" or "on decrease." So it was to the pecuniary interest of both solicitor and superintendent not to lapse industrial policies if it could be avoided.

Before commencing the criminal prosecution of plaintiff, defendant submitted the matter to its own counsel and also the county attorney. One of the issues given the jury was whether defendant had made a full and frank disclosure of all facts within its knowledge bearing upon the question of plaintiff's guilt or innocence. Nothing was said to either attorney about the supposed authorization, by the superintendents or any of them, of plaintiff's failure to lapse industrial policies more than four weeks in arrears and his use of "ordinary" premiums to carry "industrial" policies.

The jury was instructed that no superintendent had authority to waive defendant's rule that industrial policies more than four weeks in arrears must be lapsed; and that plaintiff's testimony that he had been so authorized "must be disregarded" in determining whether defendant had made a complete and fair disclosure of the facts "to its attorney * * * and the county attorney." There was a further instruction that if any superintendent had advised plaintiff to use ordinary life premiums "to make good a deficiency in his industrial collections, or had consented to such use," and the superintendent was financially interested, by way of increased salary, in plaintiff's not reporting lapses of policies that should have been lapsed, "you cannot impute such acts or knowledge" of the superintendent to the defendant.

Plaintiff's admitted use of the two premiums on ordinary policies to pay those due from other insured under industrial policies as a matter of plain sense was larceny from someone. It was a fraud upon the two men who paid the money because neither their applications nor payments were reported to defendant. It was a fraud upon defendant because even on plaintiff's theory it was getting the money on but one group of policies where the premiums on two were due. What plaintiff really did was to take defendant's money, received on the two ordinary life applications, to make good his own obligation resulting from his carrying, against defendant's rule, in-

dustrial policies which should have been lapsed. It does not help him any that he may have had at the outset the laudable motive of assisting some deserving holders of industrial insurance, for the plain fact is that when he reported their unpaid premiums as paid he rendered himself liable. Nobody, not even an executive officer of defendant, could have given him authority to juggle the funds of others in the manner he claims to have done.

Plaintiff himself was an agent of defendant, owing his employer all the duties incident to that relationship. But that feature of the matter need not be stressed, for the law does not bind a principal "by an act of the agent in excess of his actual authority" in favor of one dealing with an agent and having knowledge of the extent of his authority. 2 C. J. 561. Instructions modifying or limiting the authority of the agent and known to such a person are as binding upon him as they are upon the agent. "He can acquire no rights against the principal by dealing with the agent contrary thereto." 2 C. J. 569. So no third person, to say nothing of another representative of the same principal, can base any right upon the act of an agent in known disobedience of the expressed orders of his principal. Alward v. Oakes, 63 Minn. 190-193, 65 N. W. 270; 1 Mechem, Agency, § 752.

Plainly, therefore, the instructions above referred to and which are the main target of this appeal are correct applications of familiar and fundamental law of agency. Plaintiff admitted that "if the company knew it" violations of defendant's rule requiring the lapse of industrial policies more than four weeks in arrears would result in his discharge; that he was "taking chances" on getting his money, because the more insurance he wrote "on the books the bigger the salary" he got; and was "covering" the falsification of his accounts to deceive his employer and so hold his job. He knew that he was breaking a rule, violation of which his employer would not tolerate. His theory is that he got from his superintendent authority to lift money from the one account and divert it from the one purpose to which it was irrevocably applied and use it in another to make good a financial delinquency of his

own, and that now he can make good that claim to the loss of his employer. To support such a claim we would have to find, by implication, an authority in the superintendent to authorize a coagent to commit larceny from their common employer or its customers. It cannot be done. The proposition is so lacking in the substance of legal principle as to be incapable of surviving its own statement.

The other assignments of error are and should be dismissed without discussion. They have been considered and found to present no warrant for a reversal.

Order affirmed.