# STATE v. CLINTON ELIJAH.[1]

January 12, 1940.

No. 32,225.

*C. U. Landrum* and *D. N. Lindeman,* for appellant.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, and *Carl G. Buck, Jr.,* County Attorney, for the State.

[1]Reported in 289 N. W. 575.

PETERSON, JUSTICE.

Defendant was convicted of carnal knowledge and appeals. The prosecutrix claims that the act occurred on the evening of March 15, 1938. She testified that on the evening in question she went to the home of defendant's parents to borrow an egg beater; that defendant, who was then living at the home of his folks with his wife and child, gave her a ride home in his automobile, but that instead of going directly to her home they drove a short way beyond her home and committed the act in the automobile.

There were no eyewitnesses. To give weight to and bolster the story of the complaining witness, the prosecution was permitted to show prior acts of intercourse between the prosecutrix and defendant, which it corroborated by one Hauder. The prosecutrix testified that she had had intercourse with defendant on October 31, 1937, while she, defendant, her brother, Hauder, his sister, and another girl were out, as Hauder stated, "Halloweening." She testified that on that occasion she and defendant took a walk into a near-by woods and committed the act while Hauder and the others repaired the automobile in which they all were riding.

Hauder as a state's witness testified that he saw defendant and the prosecutrix walk down the road, turn into the woods, and that defendant told Hauder and the prosecutrix' brother that he "finally made it," which was interpreted below as meaning that he had intercourse with her. Hauder lamented on the stand that he had not, when defendant told him of this affair, "taken a club and knocked" defendant "over the head right then and there."

There was testimony that the prosecutrix, Hauder, his sister, and her brother had been going around together for several years.

The state's objections were sustained to inquiries put to Hauder, as to whether he, the prosecutrix, her brother, and his own sister had not drunk the prosecuting witness's father's wine, how many times the four of them slept "alone" in the father's house, whether the four had parked in a certain barnyard, and whether he discussed with anyone the question of marriage with the girl. Defendant stated that the purpose of this line of inquiry was to test the credibility and veracity of the witness and his interest in the

outcome of the prosecution. The prosecutrix had already been asked on cross-examination whether or not she had testified on the preliminary hearing to the facts which the questions evidently sought to elicit.

Defendant denied that he was out with the girl both on the night of March 15 and the previous Halloween and that he was never at a party, when the girl was along, except when his wife was present. He claimed that on March 15, 1938, his car was in such disrepair that it could not be operated.

The rulings permitting the prosecution to show prior acts of intercourse between the parties, denying defendant leave to inquire about the alleged drinking of the wine, sleeping alone in the father's house, parking in the barnyard and the discussion of the marriage, and some others which we think do not merit discussion, are assigned as error.

■ Evidence of prior acts of intercourse between the girl and defendant was admissible as disclosing an inclination of the parties to commit the act complained of and as corroborative of the specific charge. State v. Wallen, 123 Minn. 128, 143 N. W. 119; State v. Schueller, 120 Minn. 26, 138 N. W. 937.

■ The cross-examination of the girl was to discredit her by showing that she drank intoxicating liquor and had sexual intercourse with Hauder, who had not then been called as a witness, and with other men. Cross-examination should not be permitted to show that the complaining witness in a carnal knowledge prosecution had sexual intercourse with other men, since such acts do not constitute a defense to the offense charged or affect the credibility of the complainant. State v. McPadden, 150 Minn. 62, 184 N. W. 568. Some exceptional cases, of which this is not one, permit such inquiry where the complaining witness claims that her condition, such as pregnancy, infection with venereal disease, and the like, is attributable to intercourse with the defendant and the purpose of the cross-examination is to show the falsity of the claim. State v. Kraus, 175 Minn. 174, 220 N. W. 547.

■ The rulings on Hauder's cross-examination enabled the prosecution to present him merely as one who attended the Hal-

loween party. Defendant proposed by cross-examination to show in addition that Hauder harbored deep-seated feelings of interest, bias, and injury, by testimony that Hauder and the prosecuting witness kept company for some considerable time, had been intimate, and discussed marriage. His remark on the stand that he should have knocked defendant over the head with a club disclosed some hostility. The excluded cross-examination was to show by Hauder himself that defendant took the girl with whom Hauder had discussed marriage and been intimate away from him, walked down the road with her, and in plain sight turned into the woods, came back and then told Hauder and the prosecutrix' brother that he had had intercourse with her. The testimony of the girl on the preliminary hearing, if it was as indicated, was in accord with this version and furnished reasonable expectation that the cross-examination would show what defendant attempted to elicit. If the cross-examination had shown such a story, Hauder would have appeared then in a much different light. Instead of merely being present at the Halloween affair, he would have been shown as having a strong interest in the prosecutrix and the outcome of the prosecution and that he was the suitor, wronged to his face, harboring resentment, hostility, injured feelings, and withal telling a tale which in some respects is almost unbelievable, as, for example, that defendant told him and the prosecutrix' brother that he had had intercourse with her. That of the four persons available as witnesses to tell what happened on Halloween night only Hauder was called as a witness by the prosecution made it all the more important that his story be scrutinized.

Defendant had a right to exhibit to the jury not only what sort of person but also what sort of story they were asked to believe. The excluded testimony would have shed considerable light on both questions. So far as his own acts were concerned, they were of Hauder's own choice and show his true character. One more fact ought to be stated. Defendant had a prior conviction for larceny. With that background, it is obvious that it would not take much to turn the scales against him in a case like this. That in itself was all the more reason for safeguarding his rights on the trial.

We do not say that Hauder was unworthy of belief as a matter of law, but only that defendant was entitled to have the jury determine his credibility with all the light which a reasonable cross-examination would have shed on that question. Not all testimony is to be believed. Some is to be rejected as untrustworthy. Other evidence, even though coming from a bad source, may be believed. State v. Korsch, 168 Minn. 354, 210 N. W. 10. Cross-examination is an agency for the development of truth in judicial inquiries. Its chief purpose is to enable the trier of fact to determine what evidence is credible and what is not. For that purpose it is important to show the relation of the witness to the cause and the parties, his bias or interest, or any other fact which may bear on his truthfulness. 6 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 10348; 28 R. C. L. pp. 607, 612, 615, §§ 197, 201, 204. While the statement of the rule may seem trite as mere hornbook law, it controls decision here. The existence of such bias may be shown by "the witness' relationship with a party by blood or marriage or by illicit intercourse." 1 Greenleaf, Evidence (16 ed. by Wigmore) p. 575, § 450, note 7. People v. Worthington, 105 Cal. 166, 38 P. 689; State v. McGahey, 3 N. D. 293, 55 N. W. 753; Orr v. State, 21 Okl. Cr. 189, 205 P. 941; Commonwealth v. Stewart, 65 Pa. Super. 409. It is permissible under the rule to show the illicit and other relations of the witness with the victim of the crime for which defendant is being prosecuted. Smith v. State, 22 Ala. App. 36, 111 So. 763; People v. Peccole, 92 Cal. App. 470, 268 P. 473; People v. Maggio, 324 Ill. 516, 155 N. E. 373; Rasnake v. Commonwealth, 135 Va. 677, 115 S. E. 543; State v. Cole (Mo. Sup.) 213 S. W. 110; Henry v. State, 6 Okl. Cr. 430, 119 P. 278; 70 C. J. p. 956, § 1160, note 27; note 74 A. L. R. 1157. On the same principle, illicit relations between the witness and defendant may be shown. Motley v. State, 207 Ala. 640, 93 So. 508, 27 A. L. R. 276, and note, p. 278. Not only the relationship existing at the time the crime was committed, but such a relationship afterwards may be shown. In Tla-Koo-Yel-Lee v. United States, 167 U. S. 274, 17 S. Ct. 855, 856, 42 L. ed. 166, the defendant was charged with murder. The wife of his alleged ac-

complice testified against him. It was held error to rule out questions put to the wife to show that, since her husband's arrest, she was living with a government witness, who corroborated the wife's story that the killing was done by the defendant and her husband. The court said [167 U. S. 276]: "It is apparent how important it was to show to the jury, if possible, the bias, if any, of the witness against the defendant, or to show that her credibility was not to be depended upon by the jury," and reversed the conviction.

It is especially important to permit the relationship to be shown between the alleged victim of the crime and a witness whose testimony is given to corroborate her version. In Bethel v. State, 162 Ark. 76, 257 S. W. 740, 31 A. L. R. 402, it was held error not to permit proof of the relationship between the prosecutrix and her corroborating witness in a seduction case.

■ The bias, state of mind, and feelings of a witness upon whose testimony in part the issue is to be determined is not a collateral or immaterial matter. State v. Dee, 14 Minn. 27 (35); Alward v. Oakes, 63 Minn. 190, 65 N. W. 270; 6 Dunnell, Minn. Dig. (2 ed.) § 10348, notes 46-48; Tla-Koo-Yel-Lee v. United States, 167 U. S. 274; Byrd v. State, 17 Ala. App. 301, 84 So. 777; Dixon v. State, 189 Ark. 812, 75 S. W. (2d) 242; State v. Gardner, 174 Iowa, 748, 156 N. W. 747, L. R. A. 1916D, p. 767, Ann. Cas. 1917D, 239; 1 Thompson, Trials (2 ed.) p. 452, § 450, notes 23-24; 3 Wharton, Criminal Evidence (11 ed.) p. 2179, § 1307, note 14; Underhill, Evidence, p. 523, § 354b; 28 R. C. L. pp. 612-615, §§ 201, 203, 204.

Cross-examination to show the bias, prejudice, interest, or disposition of the witness to tell the truth is a matter of right, the exercise of which is indispensable to show the truth. The authorities cited *supra* that a party has a right to show the bias or interest of a witness hold without exception that the denial of the right is prejudicial and error. In State v. Dee, 14 Minn. 27 (35), which is cited and quoted at length in Thompson on Trials (2 ed.) at p. 453, § 451, note 28, and State v. Collins, 33 Kan. 77, at p. 82, 5 P. 368, we so held without qualification. In Alward v. Oakes, 63 Minn. 190, 193, 65 N. W. 270, 271, the lower court denied

plaintiff leave to cross-examine a witness relative to certain letters which he wrote. After first pointing out that such cross-examination does not relate to a collateral matter within the rule limiting cross-examination to matters relevant to the issue and that the scope of cross-examination is within the sound discretion of the trial court, Mr. Justice Mitchell said:

"But these letters  *  *  *  went so directly to the disposition of the witness to conceal or pervert the truth in this case that we think the court erred in not admitting them in evidence, and the prejudice resulting from this error is enhanced by the peculiar condition of things in this case already alluded to."

In Alford v. United States, 282 U. S. 687, 51 S. Ct. 218, 75 L. ed. 624, this question was carefully considered. There the prosecution's objection was sustained to the defense question on cross-examination of a prosecution witness: "Where do you live?" The relevancy of the inquiry as touching his credibility was first pointed out. The court then said [282 U. S. 692]:

"It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them," and "to say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial."

The implications of the rule circumscribe the discretion of the trial court to limit cross-examination. If it is essential to a fair trial that inquiry be permitted as to those matters which show the bias, prejudice, interest, and disposition of a witness to tell the truth, an exercise of discretion which prevents inquiry as to any legitimate subject of such inquiry cannot be permitted. In Alford

v. United States, 282 U. S. 687, 694, the court pointed out that while the discretion may be exercised to determine "when the subject is exhausted," it may not be so exercised as to prevent inquiry as to the subject altogether. See 70 C. J. p. 966, *et seq.* §§ 1169-1171. In 3 Jones, Evidence, Civil Cases (4 ed.) pp. 1538-1539, § 829, note 20, the rule is stated:

"But, although a question as to the extent to which the cross-examination may extend is to be determined with a view to the discretion of the trial judge, nevertheless, if the latter has excluded testimony which would clearly show bias on the part of a witness, it is error and may be ground for a new trial."

Here the rulings prevented the inquiry altogether as to the subjects mentioned.

The importance of ascertaining the motives which improperly or corruptly influence a witness is so manifest that it ought not to be necessary to do more than suggest the question. After all, jurors like other persons are not likely to believe that a witness has testified falsely or even colored his testimony, unless there was some reason for doing so. "Even an untruthful man will not usually lie without a motive." Gates v. Kelley, 15 N. D. 639, 647, 110 N. W. 770, 773.

There was no error in excluding such questions put to the prosecutrix for the reason that Hauder had not yet testified, and it did not appear that he would do so. As the case then stood, it appeared as if the purpose was to show illicit relations with men other than defendant, which was not permissible. But when Hauder testified the whole matter became relevant. In that situation, defendant, if he had been so advised, should have asked leave to recall the girl and cross-examine her further relative to her relationship with Hauder. Such leave should have been granted, if requested. State v. Townley, 149 Minn. 5, 182 N. W. 773, 17 A. L. R. 253.

For errors in unduly restricting the right of cross-examination in the respects mentioned, a new trial must be granted.

Reversed and new trial granted.