**STATE of Minnesota, Respondent,**

v.

**Raymond Timothy CRIMS, Appellant.**

**Nos. C6–95–41, C1–95–304.**

Court of Appeals of Minnesota.

Nov. 28, 1995.

Review Denied Jan. 23, 1996.

---

Hubert H. Humphrey, III, Attorney General, St. Paul, Michael O. Freeman, Hennepin County Attorney, and Gayle C. Hendley, Assistant County Attorney, Minneapolis, for Respondent.

John M. Stuart, State Public Defender, Thomas R. Ragatz, Special Assistant State Public Defender, and Faegre & Benson, Professional Limited Liability Partnership, Minneapolis, for Appellant.

Considered and decided by SHORT, P.J., and PARKER and KLAPHAKE, JJ.

## OPINION

SHORT, Judge.

A jury convicted Raymond Crims of third-degree criminal sexual conduct in violation of Minn.Stat. § 609.344, subd. 1(c). On appeal, Crims argues he is entitled to a new trial because the trial court committed plain error when instructing the jury, violated his constitutional rights by excluding evidence of the victim's history as a prostitute, and abused its discretion by refusing to grant a new trial due to juror misconduct.

## FACTS

On December 2, 1993, Raymond Crims met T.K. at Danny's Bar. For three to four hours, the two played pool, danced, hugged, and kissed. Shortly after midnight, they left the bar arm-in-arm. Before long, several residents of a Minneapolis apartment building heard T.K. cry for help and scream she was being raped. Peering out a window, a resident saw two figures in the snow and noticed one was struggling to remove the other's pants.

When the police arrived a few minutes later, they found Crims engaging in sexual intercourse with T.K. His hand covered her mouth. Nearby, a utility knife lay in the snow, its blade extended. Also strewn about the scene were T.K.'s lip balm, medication, cigarettes, and other personal effects. Leading to the scene, the police observed marks consistent with the dragging of a body through the snow. The officers identified themselves. Four times, they ordered Crims to stop. When Crims failed to do so, the officers physically removed him from T.K.

When questioned by police and at trial, Crims and T.K. gave conflicting accounts of the night's events. Crims stated T.K. consented to have sex with him as compensation for $20 in drug money, but she began screaming before he penetrated her. By contrast, T.K. asserted Crims offered to walk her to a friend's house, then pushed her to the ground and raped her.

The state charged Crims with first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342, subd. 1(d) (dangerous weapon). At his first trial, in May 1994, Crims sought to prove T.K. consented to sex as compensation for drug money. To support his theory, Crims proposed to introduce evidence of T.K.'s 1991 arrest for prostitution. Crims argued he required this evidence to develop his consent/prostitution defense, as well as the theory that T.K. fabricated the incident after a dispute arose over her fee. Crims claimed that if the trial court refused to admit T.K.'s arrest record, it would violate his constitutional rights to present a defense and confront his accusers.

Initially, the trial court barred the evidence. However, at trial, the prosecution opened the door by suggesting T.K. would never prostitute herself. Because of the prosecution's questions, the trial court allowed Crims to introduce evidence of T.K.'s prostitution in 1991. That trial ended in a hung jury. After the trial court declared a mistrial, the state added two counts to its complaint: first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(c) (fear of imminent great bodily harm), and third-degree criminal sexual conduct in violation of Minn.Stat. § 609.344, subd. 1(c) (force or coercion).

At his second trial, Crims again moved to introduce evidence of T.K.'s past sexual behavior. This time, the defense proposed to introduce the testimony of T.K.'s apartment manager, who also worked at Danny's Bar. The witness offered to testify: (1) at the end of January or the beginning of February 1994, T.K. exchanged sex for cocaine at a party; (2) in May 1994, she asked the witness for condoms so she could earn money to pay bills; (3) also in May, in exchange for a small package, she performed fellatio on a man outside her apartment building; and (4) during the same period, she once offered to perform fellatio on the witness if he repaired her electricity. Because these events took place after the December 1993 incident, the trial court refused to admit them.

At the close of Crims' second trial, the trial court instructed the jury. With regard to the third-degree criminal sexual conduct charge, the court defined the elements as: (1) penetration; (2) without consent; (3) by use of force or coercion. The court defined penetration as "sexual intercourse, fellatio or any intrusion however slight into the genital or anal openings * * *." It described consent as "a voluntary and uncoerced agreement to perform a particular sexual act at that time [it] takes place."

An hour after the jury retired, its foreperson passed a note to the court:

If someone says no *during* the act of sexual intercourse, under the law is it rape if the other person continues the act after the other person asks him to stop[?]

After securing the agreement of counsel, the trial court advised the jury to review its

written instructions carefully. The jury then informed the court it found the answer in the written instructions. Shortly thereafter, the jury reached a verdict and found Crims not guilty on both counts of first-degree criminal sexual conduct (dangerous weapon and fear of great bodily harm), but guilty of third-degree criminal sexual conduct (force or coercion).

Six days later, a police investigator saw T.K. by chance and informed her that the jury convicted Crims. T.K. asked the investigator what consequences could flow from a victim's perception, upon taking the stand, of a familiar face in the jury box. After questioning T.K. further, the investigator considered her inquiry purely hypothetical. Nonetheless, he reported the conversation.

On the basis of the investigator's report, Crims moved for a hearing on juror misconduct. The trial court granted his motion. Before the hearing, the trial court agreed with counsel on the questions it would propound to the jury. At the hearing, counsel received the opportunity to ask the jurors additional questions, but declined to do so. Each juror denied prior contact with any of the witnesses. T.K., having died in the interim, did not appear at the hearing. Without any further offer of proof, Crims requested the trial court to order a new trial. The trial court denied his motion and proceeded with sentencing.

## ISSUES

I. Did the trial court commit plain error in instructing the jury?

II. Did the trial court violate Crims's constitutional rights by refusing to admit evidence of the victim's history of prostitution?

III. Did the trial court abuse its discretion by refusing to order a new trial due to juror misconduct?

## ANALYSIS

■ In reviewing a trial court's jury instructions, evidentiary rulings, and denial of a motion for a new trial, we examine the record for abuse of discretion and errors of law. *Uselman v. Uselman,* 464 N.W.2d 130,

138 (Minn.1990) (evidentiary rulings); *Halla Nursery v. Baumann–Furrie & Co.,* 454 N.W.2d 905, 910 (Minn.1990) (denial of motion for new trial); *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986) (jury instructions, abuse of discretion); *Alevizos v. Metropolitan Airports Comm'n,* 452 N.W.2d 492, 501 (Minn.App.1990) (jury instructions, error of law), *review denied* (Minn. May 11, 1990). We review questions of law de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). In this case, we are asked to decide whether the Rape Shield Act infringes upon Crims's fundamental rights.

### I.

■ In response to a jury's request for supplemental instructions, a trial court enjoys the discretion to amplify previous instructions, reread previous instructions, or not respond. Minn.R.Crim.P. 26.03, subd. 19(3); *State v. Murphy,* 380 N.W.2d 766, 772 (Minn.1986). Failure to challenge an instruction at trial waives the right to appeal that issue unless the trial court committed plain error. *State v. Shannon,* 514 N.W.2d 790, 793 (Minn.1994); *State v. Dolbeare,* 511 N.W.2d 443, 446 (Minn.1994). On occasion, a trial court commits plain error by refusing to give supplemental instructions. For example, if the prosecutor, in closing arguments, misinterprets an ambiguous portion of the controlling statute, the trial court plainly errs by simply repeating the statute's language when the jury asks for clarification. *Shannon,* 514 N.W.2d at 791–93.

■ In the trial court proceedings, Crims never objected to the trial court's instructions. He now argues the trial court committed plain error by: (1) refusing to give supplemental instructions to dispel the jury's confusion about the significance of withdrawn consent; and (2) failing to inform the jury that rape is impossible upon forcible continuation of initially-consensual sexual relations.

■ While the interests of justice occasionally require a trial court to clarify its instructions, a trial court may properly refer to its initial charge when that charge provides the jury with the guidance necessary to

resolve its confusion. *State v. Harwell,* 515 N.W.2d 105, 108–09 (Minn.App.1994), *review denied* (Minn. June 15, 1994); *see also* Minn. R.Crim.P. 26.03, subd. 19(3) (vesting trial courts with discretion to amplify previous instructions, reread previous instructions, or not to respond to requests for clarification); *Murphy,* 380 N.W.2d at 772 (same). In this case, the trial court referred the jury to its initial instructions. Nothing in the record indicates the jury was incapable of resolving its confusion by reference to the written instructions it already possessed. Indeed, shortly after the trial court advised the jurors to reread its instructions carefully, the jury informed the court that: (1) its response was satisfactory; (2) they found the answer in its instructions; and (3) they required no further guidance. Under these circumstances, we find no plain error in the guidance provided by the trial court.

■ Crims also argues the trial court committed plain error by failing to inform the jury that the forcible continuation of initially-consensual sexual relations does not constitute rape. *See People v. Vela,* 172 Cal. App.3d 237, 218 Cal.Rptr. 161, 164–65 (1985) (finding no rape when victim withdraws consent during act because statute defines nature of act by reference to moment of slightest penetration), *review denied* (Cal. Dec. 31, 1985); *Battle v. State,* 287 Md. 675, 414 A.2d 1266, 1269–70 (1980) (arriving at same determination because statute merely codifies common law); *State v. Way,* 297 N.C. 293, 254 S.E.2d 760, 761–62 (1979) (reaching same conclusion with little analysis). In contrast to the foreign authority cited by Crims, our legislature defines penetration *both* as the initial intrusion into the body of another *and* as the act of sexual intercourse. Minn.Stat. § 609.341, subd. 12 (1992). While the jury must determine whether the defendant has "accomplished" penetration without consent and by means of force, Minnesota law provides a broader reference point than the moment of slightest intrusion. *Id.; see State v. Robinson,* 496 A.2d 1067, 1069–70 & n. 2 (Me.1985) (upholding instruction on withdrawn consent because statute equated sexual intercourse and penetration); *see also State v. Siering,* 35 Conn.App. 173, 644 A.2d 958, 961–62, (rejecting argument that act is defined at "moment" of penetration because the "ordinary meaning" of sexual intercourse is continued penetration), *certification denied,* 231 Conn. 914, 648 A.2d 158 (1994); *cf. State v. Jones,* 521 N.W.2d 662, 672 (S.D. 1994) (rejecting the idea that initial consent forecloses a rape prosecution).

Our holding that rape includes forcible continuance of initially-consensual sexual relations is consistent with other Minnesota statutes. *See* Minn.Stat. § 609.344, subd. 1(d) (Supp.1993) (defining third-degree criminal sexual conduct as penetration of a person who the actor should know is physically helpless); Minn.Stat. § 609.341, subd. 9 (1992) (describing a physically helpless person as one who cannot "withhold consent or withdraw"); Minn.Stat. § 609.341, subd. 9 (1994) (clarifying the provision to read "withhold consent or withdraw *consent*"). Thus, the trial court did not commit plain error by failing to instruct the jury, sua sponte, that rape becomes a legal impossibility after a victim has initially consented to penetration.

## II.

■ Every criminal defendant has a right to fundamental fairness and to be "afforded a meaningful opportunity to present a complete defense." *State v. Richards,* 495 N.W.2d 187, 191 (Minn.1992) (quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)). The Due Process Clauses of the Federal and Minnesota Constitutions require no less. *Id.* The right to present a defense includes the opportunity to develop the defendant's version of the facts, so the jury may decide where the truth lies. *Id.* at 194 (quoting *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967)). The Confrontation Clauses of the Federal and Minnesota Constitutions serve the same purpose, affording a defendant the opportunity to advance his or her theory of the case by revealing an adverse witness's bias or disposition to lie. *State v. Pride,* 528 N.W.2d 862, 867 (Minn.1995) (quoting *State v. Elijah,* 206 Minn. 619, 624, 289 N.W. 575, 578 (1940)); *see also Stephens v. Miller,* 13 F.3d 998, 1013 (7th Cir.) (Cudahy, J., dissenting) (discussing the similarity between the right

to present a defense and to confront accusers), *cert. denied,* —— U.S. ——, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994).

 To vindicate these rights, courts must allow defendants to present evidence that is material and favorable to their theory of the case. *United States v. Saunders,* 736 F.Supp. 698, 703 (E.D.Va.1990), *aff'd,* 943 F.2d 388, 391 (4th Cir.1991), *cert. denied,* 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992); *see also United States v. Valenzuela–Bernal,* 458 U.S. 858, 867–68, 102 S.Ct. 3440, 3446–47, 73 L.Ed.2d 1193 (1982) (requiring a defendant to demonstrate exclusion of material and favorable evidence in order to establish a violation of constitutional right of access to evidence); *Washington,* 388 U.S. at 19, 23, 87 S.Ct. at 1923, 1925 (finding violation of the right to present a defense because trial court excluded "testimony * * * relevant and material to the defense"); *United States v. Dorsey,* 16 M.J. 1, 5 (C.M.A.1983) (noting that the "criminal accused has the right to present evidence which is relevant, material, and favorable to his defense"). However, a defendant has *no* right to introduce evidence that either is irrelevant, or whose prejudicial effect outweighs its probative value. *Jeffries v. Nix,* 912 F.2d 982, 986 (8th Cir.1990) (quoting *State v. Clarke,* 343 N.W.2d 158, 161 (Iowa 1984)), *cert. denied,* 499 U.S. 927, 111 S.Ct. 1327, 113 L.Ed.2d 259 (1991); *Saunders,* 736 F.Supp. at 703–04; *State v. Brown,* 636 S.W.2d 929, 933–34 (Mo. 1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 448 (1983), *overruled in part on other grounds by State v. Jones,* 716 S.W.2d 799, 800 (Mo.1986).

 In a prosecution for criminal sexual conduct or incest, evidence of a victim's previous sexual conduct is not admitted except by court order. Minn.Stat. § 609.347, subd. 3 (1994). In ruling on a defendant's offer of such evidence, the trial court considers the defendant's constitutional rights,

Minn.R.Evid. 403 and 412, and the rape shield statute. That statute provides:

> (a) When consent of the victim is a defense in the case, the following evidence is admissible:
>
> (i) evidence of the victim's previous sexual conduct tending to establish a common scheme or plan of similar sexual conduct under circumstances similar to the case at issue. In order to find a common scheme or plan, the judge must find that the victim made prior allegations of sexual assault which were fabricated; and
>
> (ii) evidence of the victim's previous sexual conduct with the accused.

Minn.Stat. § 609.347, subd. 3. In the event of a conflict, the defendant's constitutional rights require admission of evidence excluded by the rape shield law. *State v. Friend,* 493 N.W.2d 540, 545 (Minn.1992).

 Crims agrees Minn.Stat. § 609.347, subd. 3 prohibits introduction of T.K.'s history of prostitution. However, he argues that the law unconstitutionally prohibits him from presenting his theory of consent to prostitution and, thus, from confronting his accusers.[1] We must, therefore, decide whether T.K.'s sexual history was relevant evidence excluded for the purpose of minimizing victim harassment or whether T.K.'s sexual behavior with third parties was irrelevant to the issue of consent to sexual relations with Crims.

Some jurisdictions interpret rape shield laws principally as a means of excluding evidence that might embarrass sexual assault victims, essentially forming an exception to the general practice of admitting *all* relevant evidence. *See, e.g., Robinson v. State,* 575 So.2d 699, 702 (Fla.Dist.Ct.App.), *review denied,* 589 So.2d 292 (Fla.1991); *Clarke,* 343 N.W.2d at 160–61; *Johnson v. State,* 332 Md. 456, 632 A.2d 152, 156 (1993); *People v. Hackett,* 421 Mich. 338, 365 N.W.2d 120, 124 (1984); *State v. Williams,* 21 Ohio St.3d 33,

---

1. In his original motion to admit evidence of T.K.'s prostitution, Crims proposed to demonstrate: (1) he contracted with T.K. for an act of prostitution; and (2) the pair argued over T.K.'s fee, thus creating a motive to fabricate the incident. However, Crims never advanced the latter theory at trial or on appeal. Consequently, we address only whether the trial court committed constitutional error by refusing to admit evidence of T.K.'s prostitution for the purpose of developing the theory of consent to prostitution.

487 N.E.2d 560, 561 (1986) (quoting *State v. Gardner,* 59 Ohio St.2d 14, 391 N.E.2d 337, 340 (1979)); *State v. Green,* 163 W.Va. 681, 692–93, 260 S.E.2d 257, 264 (1979) (recommending a statutory regime that would exclude relevant evidence in order to avoid "besmirchment" of victims' character). However, a rule that excludes material evidence for reasons of policy will, by definition, run afoul of defendants' fundamental rights. Adopting this perspective as their point of departure, some jurisdictions understandably find the victim's sexual history relevant whenever the defendant succeeds in establishing a cosmetic similarity, such as prostitution. *See, e.g., Johnson,* 632 A.2d at 159–62; *People v. Slovinski,* 166 Mich.App. 158, 420 N.W.2d 145, 154–56 (1988); *Williams,* 487 N.E.2d at 561–63; Green, 163 W. Va. at 692–93, 260 S.E.2d at 264; *State v. Herndon,* 145 Wis.2d 91, 426 N.W.2d 347, 361–63 (App. 1988), *overruled in part by State v. Pulizzano,* 155 Wis.2d 633, 456 N.W.2d 325, 330 (1990) (overruling issue of statute's constitutionality, but not constitutional requirement of admissibility); *see also Demers v. State,* 209 Conn. 143, 547 A.2d 28, 35–37 (1988) (finding the Constitution requires admission of evidence of past prostitution because it is probative of defense's theory of consent to prostitution); *Robinson,* 575 So.2d at 702–03 (same).

■ We are constrained to interpret statutes as constitutional in purpose and effect unless a party proves otherwise beyond a reasonable doubt. Minn.Stat. § 645.17(3) (1994); *Estate of Jones v. Kvamme,* 529 N.W.2d 335, 337 (Minn.1995). Thus, when confronted with a statute susceptible to multiple interpretations, we adopt the one that stands in harmony with the Constitution, even if the alternative construction might otherwise seem a more accurate reflection of legislative intent. *Page v. Carlson,* 488 N.W.2d 274, 281 (Minn.1992); *State ex rel. Forslund v. Bronson,* 305 N.W.2d 748, 751 (Minn.1981); *Schumann v. Commissioner of Taxation,* 312 Minn. 477, 481–82, 253 N.W.2d 130, 132 (1977); *see also* Minn.Stat. § 645.17(3) (allowing court to presume the legislature intended not to violate the Constitution).

■ Following these principles, we conclude the rape shield statute serves to emphasize the general irrelevance of a victim's sexual history, not to remove relevant evidence from the jury's consideration. *See Elijah,* 206 Minn. at 621, 626, 289 N.W. at 577, 579 (holding the victim's sexual history admissible only in "exceptional cases" (i.e., when relevant to prove a witness's bias) because consensual relations with third parties generally provide neither a defense to, nor relevant information about, the facts at bar); *see also Jeffries,* 912 F.2d at 987–88 (essentially finding victim's sexual history irrelevant unless *clearly* similar to the facts at bar); *United States v. Kasto,* 584 F.2d 268, 271 & n. 2, 272 (8th Cir.1978) (applying a similar test and concluding that a victim's sexual history is normally either irrelevant or more prejudicial than probative), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979); *Hagins v. United States,* 639 A.2d 612, 614–16 (D.C.1994) (doubting the relevance of victim's history of prostitution to defendant's theory of consent to prostitution); *People v. Tennin,* 162 Ill.App.3d 520, 113 Ill.Dec. 897, 900, 515 N.E.2d 1056, 1059 (1987) (holding the victim's history of prostitution irrelevant to defendant's theory of consent to prostitution); *Commonwealth v. Joyce,* 382 Mass. 222, 415 N.E.2d 181, 187 (1981) (holding victim's history of prostitution admissible to show motive to fabricate, but not to demonstrate consent to prostitution); *Holloway v. State,* 695 S.W.2d 112, 117 (Tex. Ct.App.1985) (finding evidence of recent prostitution material to defendant's theory of consent to prostitution, but more prejudicial than probative), *aff'd,* 751 S.W.2d 866, 870–71 (Tex.Crim.App.1988) (affirming because evidence of recent prostitution was not even material to defendant's theory).

Viewed from this perspective, the statute's relationship with the Constitution becomes one of harmony, not tension, because it serves to remind the bench that the victim's sexual history is normally irrelevant in a sexual assault prosecution. *See, e.g., People v. Sandoval,* 135 Ill.2d 159, 142 Ill.Dec. 135, 145, 552 N.E.2d 726, 736, (acknowledging rape shield statute primarily as a codification of the common-sense premise that a victim's

sexual history is generally irrelevant to the issue of consent to relations with the accused), *cert. denied,* 498 U.S. 938, 111 S.Ct. 343, 112 L.Ed.2d 307 (1990); *Joyce,* 415 N.E.2d at 185 (same).

In addition, evidence of sexual activity with third persons cannot withstand a rule 403 weighing unless special circumstances enhance its probative value. *Kasto,* 584 F.2d at 271–72. Such circumstances include situations in which the evidence explains a physical fact in issue at trial, suggests bias or ulterior motive, or establishes a pattern of behavior *clearly* similar to the conduct at issue. *Id.* at 271 n. 2 (citing Abraham P. Ordover, *Admissibility of Patterns of Similar Sexual Conduct: The Unlamented Death of Character for Chastity,* 63 Cornell L.Rev. 90, 93–94, 110–19 (1977), who defines similar patterns of behavior to encompass only habit and modus operandi); *see Jeffries,* 912 F.2d at 987–88 (essentially finding a victim's sexual history irrelevant in the absence of compelling evidence of modus operandi); *see also Sandoval,* 142 Ill.Dec. at 147, 552 N.E.2d at 738 (defining modus operandi to include only those activities "so unusual, so outside the norm, [and so] distinctive" as to constitute a signature, and concluding anal sex falls short of this standard). Unless and until a defendant shows the victim's sexual history to be relevant to the facts at bar, this particular form of character evidence simply is not admissible under the normal rules of evidence. *See id.* (all requiring evidence of modus operandi for admission of victims' sexual history).

Crims sought to introduce T.K.'s history of exchanging sex to satisfy her desire for drugs. However, T.K.'s sexual history is irrelevant to the charge of rape without evidence of modus operandi. *See Jeffries,* 912 F.2d at 987–88 (essentially finding a victim's sexual history irrelevant in the absence of compelling evidence of modus operandi); *Kasto,* 584 F.2d at 271 & n.2, 272 (holding that such evidence is either irrelevant or more prejudicial than probative). A careful review of the record shows no pattern of *clearly* similar behavior. First, T.K. never

bargained to exchange sex for drugs. While Crims testified T.K. mentioned sex for money in passing, he never suggested the two bargained in any meaningful fashion. Crims asserts he gave T.K. $20, after which she purchased drugs, and then led him to the side of a building with the intention of "compensating" him. This sort of behavior is dissimilar from T.K.'s history of agreeing to prostitute herself for a specific quantity of drugs, performing her end, and then receiving her bargained-for earnings. *See Jeffries,* 912 F.2d at 985, 987–88 (holding victim's history of prostitution irrelevant to defendant's theory that the victim received drugs and alcohol without striking a bargain and later desired to "reimburse" the defendant with sexual favors).

Second, T.K.'s history of trading sex for drugs is not *clearly* similar to the facts of this case. T.K.'s apartment manager said T.K. had twice exchanged sex for *drugs,* once asked for condoms so she could earn money in order to pay bills, and once offered to perform fellatio on him in exchange for electrical repairs. Crims argues T.K. consented to trade sex for drug *money.* These differences preclude the establishment of modus operandi. *See id.* at 985, 987 (finding the victim's history of exchanging sex for *money* irrelevant to the defendant's theory that the victim consented to sex as compensation for *drugs and alcohol* ).

And, third, the evidence of struggle [2] precludes an inference that the events of December 3 were simply another episode in T.K.'s history of prostitution. *Id.* at 988. Under these circumstances, Crims failed to establish a pattern of *clearly* similar behavior and, thus, did not demonstrate the relevance of T.K.'s sexual history to his defense. *Id.* at 987–88; *Kasto,* 584 F.2d at 271 & n. 2, 272. Accordingly, his claims of constitutional error must fail. *Jeffries,* 912 F.2d at 986; *Kasto,* 584 F.2d at 272.

▉ Even if the evidence crossed the threshold of relevance, as defined in *Jeffries* and *Kasto,* Crims enjoyed no constitutional right to its admission because the evidence's

---

**2.** T.K.'s screams for help, her resistance to Crims's attempts to remove her clothing, the drag marks in the snow, Crims's hand across her mouth, a utility knife with its blade extended, T.K.'s personal effects strewn about the area, the cuts and bruises on her hands and legs.

prejudicial effect outweighs its probative value. *Jeffries*, 912 F.2d at 986 (quoting *Clarke*, 343 N.W.2d at 161). Crims offered evidence of four episodes of prostitution which allegedly occurred two to five months after the attack. The effect of rape on a victim's life provides the jury with no useful information about events underlying the rape charge. *Sandoval*, 142 Ill.Dec. at 151, 552 N.E.2d at 742. When unconnected to a pattern of preexisting behavior, such evidence is remote and uninstructive about the events underlying the rape charge. *See People v. Powell*, 201 Mich.App. 516, 506 N.W.2d 894, 895, 896 & n.3 (1993) (holding, in spite of the defendant's theory of consent to prostitution, that the trial court "erred" in *admitting* evidence of prostitution occurring two months after sexual assault), *appeal denied*, 445 Mich. 927, 521 N.W.2d 7 , *cert. denied*, —— U.S. ——, 115 S.Ct. 439, 130 L.Ed.2d 350 (1994).

Furthermore, this evidence would add little to the evidence of record. *See Friend*, 493 N.W.2d at 545 (weighing probative value in light of other evidence). The record demonstrates: (1) T.K. and Crims danced, kissed, and embraced at the bar for three to four hours; (2) they left the bar arm-in-arm; (3) shortly thereafter, residents of the apartment building heard T.K. screaming for help; (4) one resident saw T.K. resisting Crims's attempts to remove her clothing; and (5) when police arrived, they found abundant evidence of a struggle. As Crims admits, this evidence suggests only two conclusions: either T.K. never consented, or she withdrew her consent, after which Crims forced her to continue their encounter. In this context, T.K.'s history of prostitution carries little probative value. It might establish T.K. initially consented to have sex with Crims. However, the jury heard strong, independent testimony from the bar manager supporting this theory. Because collateral evidence of prostitution would have added nothing to Crims's consent theory nor rebutted the extensive evidence of withdrawn consent, we cannot say the trial court clearly abused its

discretion by finding T.K's sexual history either irrelevant or more prejudicial than probative. We find no constitutional error in its exclusion.[3]

 Even if the trial court abused its discretion, thereby violating Crims's constitutional right to present a defense, we would still affirm because any conceivable error was harmless beyond a reasonable doubt given the extensive evidence of withdrawn consent. *State v. Kelly*, 435 N.W.2d 807, 813 (Minn. 1989). Crims argues the hung jury at his first trial, where he introduced evidence of T.K.'s work as a prostitute in 1991, raises a reasonable doubt on the issue of harmless error. However, Crims stood accused only of first-degree criminal sexual conduct with a dangerous weapon at his first trial. Before his second trial, the state added two charges: first-degree criminal sexual conduct (fear of imminent great bodily harm), and third-degree criminal sexual conduct (force or coercion). Unlike his first trial, which ended in a hung jury, *all* the jurors in his second trial voted to acquit Crims of first-degree criminal sexual conduct. They returned a guilty verdict only on the new, third-degree count. Under these circumstances, we can find no evidence of prejudicial error.

### III.

 A trial court has the discretion to grant a new trial based on evidence of juror misconduct. *State v. Kelley*, 517 N.W.2d 905, 910 (Minn.1994). At a *Schwartz* hearing, the movant bears the burden of demonstrating actual misconduct and prejudice. *Id.* We will not disturb the trial court's decision absent an abuse of discretion. *Id.*

 Crims argues neither that he has proven misconduct, nor that he has shown prejudice. He acknowledges his attorney both approved of the questions the trial court propounded to the jurors and received the opportunity to ask additional questions. In support of his motion for a new trial, Crims argues simply that because T.K. died and

3. Even if Crims were entitled to a new trial, the rule 403 weighing would tip even further against him in future proceedings. Because T.K. has died, the jury would receive uncontradicted, live testimony about her history of prostitution. Under such circumstances, a trial court could easily find the evidence's enormously prejudicial effect substantially outweighs whatever slight probative value it may possess.

was, thus, unavailable for the *Schwartz* hearing, we should lower the burden of proof to allow for a new trial based on suspicion and conjecture. This argument is inconsistent with the high value our legal system places on finality. *See Chapman v. State,* 282 Minn. 13, 16, 162 N.W.2d 698, 700 (1968) (finding policy favoring the finality of judgments applies in criminal cases). After a careful review of the record, we cannot say the trial court abused its discretion in refusing to order a new trial based on speculation about what T.K. might have said were she alive to participate in the *Schwartz* hearing.

## DECISION

First, the trial court did not commit plain error by referring the jury to its original instructions and by declining to instruct the jury, sua sponte, that the forcible continuation of sexual relations after a victim withdraws consent does not constitute rape. Second, although the Federal and Minnesota Constitutions guarantee Crims's right to present evidence that is both material and favorable, the trial court did not abuse its discretion by excluding evidence of T.K.'s sexual history under either Minn.R.Evid. 401 or Minn.R.Evid. 403. And third, the trial court did not abuse its discretion in refusing to order a new trial where Crims produced no evidence of actual juror misconduct or prejudice.

**Affirmed.**

KLAPHAKE, Judge, concurring specially.

I concur in the result.