**STATE of Minnesota, Respondent,**

v.

**Douglas Wayne HAGEN, Appellant.**

**No. C7–85–2315.**

Court of Appeals of Minnesota.

Aug. 12, 1986.

Review Denied Oct. 17, 1986.

Hubert H. Humphrey, III, Atty. Gen., Rebecca H. Hamblin, Sp. Asst. Atty. Gen., St. Paul, Roger S. Van Heel, Stearns Co. Atty., St. Cloud, for respondent.

C. Paul Jones, State Public Defender, Bradford Colbert, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and CRIPPEN, JJ.

PARKER, Judge.

Appellant Douglas Wayne Hagen was convicted by a jury of three counts of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342(c), (d) and (e) (1984), and two counts of first-degree burglary in violation of Minn.Stat. § 609.582, subd. 1(b) and (c) (1984). He argues that the trial court erred in refusing to allow cross-examination concerning the complainant's previous sexual conduct. We reverse the convictions and remand for a new trial.

## FACTS

The complainant testified that on the morning of June 24, 1985, her husband left for work at approximately 6:45 a.m., leaving her and her two sons alone in their apartment. At about 8:00 a.m., someone knocked on the door. Complainant could not see out the door peephole, but opened the door partway. She testified that Hagen was standing in the hall and that he forced his way into the apartment, grabbed her by the throat, and took out a knife. She struggled until Hagen held the knife against her and lightly cut her on the legs, arms and side.. The complainant further testified that Hagen struck her in the head several times. Hagen then sexually assaulted complainant, but she did not believe he ejaculated because she was able to push him off.

After Hagen left, the complainant cried for about an hour and took a shower. She attempted to contact her husband about 9:30 a.m., but was unable to reach him. She was able to contact her brother-in-law about 10 a.m., but did not tell him about the assault. Feeling that "something was wrong," he called her back and ultimately came over to the apartment. Complainant then told her brother-in-law what happened, and they succeeded in contacting her husband, who arrived home about 12:20 p.m.

The police were called about 1:30 in the afternoon. The complainant was taken to a hospital for a sexual assault examination. She told a nurse that she had last had intercourse on June 4. However, a semen specimen was obtained during the examination.

The police attempted either to speak with or apprehend Hagen on June 24, but he eluded their efforts, at one point by jumping out the second-story window of a friend's apartment when the police entered the residence. Hagen was arrested on June 25 when police surrounded his residence; at that time he surrendered peacefully.

According to scientific testing performed by the Bureau of Criminal Apprehension and in the opinion of BCA experts, Hagen was most probably not the depositor of the semen collected during the assault examination. The complainant then told the officers that she had had intercourse with her husband sometime during the night before the assault. Further testing revealed that her husband was also most probably not the depositor of the semen.

Hagen acknowledged that he had met the complainant previously, but testified that he was not present at her apartment on the date of the assault. He claimed the assault was fabricated.

Pursuant to Minn.R.Evid. 404(c) and Minn.Stat. § 609.347 (1984),[1] Hagen moved the trial court for an order allowing the admission of complainant's statements to the nurse and officers concerning her last date of intercourse, the results of the two BCA secretor semen tests, and cross-examination of both the complainant and her husband concerning the source of the semen. Hagen also moved for an order allowing him to introduce evidence regarding complainant's past sexual activities with

1. Minn.Stat. § 609.347 was enacted in 1975. Upon the promulgation of the Rules of Evidence in 1977, Minn. R. Evid. 404(c)(1) replaced the evidentiary provisions of Minn.Stat. § 609.347, subd. 3. *See* Minn.Stat. § 480.0591, subd. 6 (1976) (any statute which conflicts with a Min-

nesota rule of evidence shall be of no force and effect); *see also State v. Caswell,* 320 N.W.2d 417, 419 (Minn.1982). Such motions should be made pursuant to Minn.R.Evid. 404(c)(1) and (2), not under the statute.

him. The trial court denied all motions, ruling that the probative value of evidence of the source of the semen was not substantially outweighed by its prejudicial nature. The court also ruled that any prior sexual conduct with Hagen was not relevant, since Hagen was not asserting a consent defense.

On the day of trial, the prosecutor indicated that he would not be introducing any evidence of semen. The trial court then stated that the jury should be informed that BCA testing indicated that Hagen was most probably not the depositor of the semen. The trial court, however, continued to refuse any cross-examination as to the source of the semen or the BCA determination that the complainant's husband also most probably did not deposit the semen.

In response to this ruling, the State called the BCA expert who conducted the semen tests and introduced evidence that Hagen was most probably not the depositor of the semen. The jury found Hagen guilty on all counts. He appeals from the judgment of conviction.

## ISSUES

1. Does Minn.R.Evid. 404(c)(1) prohibit evidence of the source of semen present in a rape victim where consent is not a defense and the prosecution's case does not include semen, where the evidence of the source of the semen negates the act with which defendant is charged?

2. Did the trial court err in any of its other evidentiary findings?

## DISCUSSION

### I

Minn.R.Evid. 404(c)(1) strictly limits the admissibility of evidence concerning a victim's "previous sexual conduct." However, "when the prosecutor's case includes evidence of semen * * * evidence of specific instances of the victim's previous sexual conduct [may be admitted] to show the source of the semen * * * * " if its probative value is not substantially outweighed by its prejudicial nature. Minn.R.Evid.

404(c)(1)(B). While at first glance it might appear that the prosecution's case here included evidence of semen, this was only because the trial court virtually instructed the prosecutor to introduce Hagen's BCA lab test; the record indicates the prosecution would not voluntarily have introduced the test and that the trial court thought Hagen was "entitled" to have the jury know he most probably was not the depositor of the semen. It is clear, therefore, that the evidence Hagen sought to introduce was not admissible under the limited exceptions of rule 404(c)(1); the question, instead, is whether the rule applied to prohibit the offered evidence *at all.*

■ The medical evidence and the complainant's inconsistent statements about her last date of intercourse did not strongly support the State's case. When Hagen sought an order allowing the admission of this evidence, the State claimed rule 404(c)(1) prohibited its admission because it was evidence of the victim's previous conduct which did not fall within the limited uses permitted by the rule. Where the defendant claims to have had no contact with the complainant, we do not think rule 404(c)(1) was intended to bar the admission of evidence which is "directly relevant to negate the act with which the defendant is charged." *Commonwealth v. Majorana,* 470 A.2d 80, 81 (Pa.1983). Instead, the goal of the rule is to limit evidence of the complainant's unrelated prior sexual conduct when consent is raised as a defense. *See, e.g., State v. Larson,* 389 N.W.2d 872 (Minn.1986). This concern does not apply to the circumstances before us.

The medical tests indicate that both Hagen *and* the victim's husband were most probably not the depositors of the semen found in the complainant. The complainant also gave inconsistent statements concerning her last date of intercourse, and these differing statements were prompted by the unfavorable BCA tests. Inasmuch as a period of only two hours and 15 minutes (approximately) existed between her husband's departure and her report of rape to her brother-in-law, any evidence reasonably

bearing on her activities during that period would be highly relevant. An inference that the victim had engaged in consensual extramarital intercourse could arise from this evidence and would be relevant to a potential motive to fabricate a rape. Such evidence could support a conclusion that no rape occurred at all.

■ We think, therefore, that under the facts of this case, the BCA tests, the complainant's inconsistent statements, and proper cross-examination on the source of the semen limited to the morning during which the assault is alleged to have taken place is directly relevant to negate the act with which Hagen is charged and that such evidence is not barred by rule 404(c)(1). *See also State v. Cosden*, 18 Wash.App. 213, 568 P.2d 802, 806 (1977) (where the defendant denies any sexual contact with the victim, yet the post-rape medical tests show evidence of a recent sexual contact, then all recent sexual contacts which could account for those testing results become highly relevant on the issue of defendant's responsibility for the crime).

■ Nor is the probative value of the evidence offered by Hagen substantially outweighed by the danger of unfair prejudice under Minn.R.Evid. 403 in this case. Hagen disputes virtually all of the complainant's testimony. His defense is that he was not at complainant's residence at all and that the medical evidence indicates there existed a potential motive to fabricate a rape charge. Under these circumstances, the probative value of the offered evidence far outweighs its danger of unfair prejudice. The trial court, of course, has broad discretion in controlling any duplicative or harassing cross-examination of the complainant. *See State v. Olkon*, 299 N.W.2d 89, 101 (Minn.1981).[2]

Having determined that the trial court erred in excluding the offered evidence, we must determine whether the error was so prejudicial as to require reversal. *See State v. Berkelman*, 355 N.W.2d 394, 397

(Minn.1984). This requires us to look to the strength of the State's evidence. *State v. Larson*, 389 N.W.2d 872 (Minn.1986) (citing *State v. Caswell*, 320 N.W.2d 417 (Minn.1982)).

Here, the defendant denies seeing or having any contact with the complainant on the date in question. There is no corroborating evidence that the defendant was ever present at complainant's residence. The only evidence that links Hagen to this assault is the complainant's testimony. The exclusion of evidence relevant to her credibility and potential motive to fabricate was therefore clearly prejudicial.

## II

■ We address briefly Hagen's other claims of error. The trial court did not err in excluding evidence that Hagen and the complainant had engaged in consensual intercourse one month before the date of the incident. This is evidence of previous sexual conduct to which rule 404(c)(1) was intended to apply. Such evidence is admissible under the rule only if consent is a defense in the case. Here, it is not, and the rule therefore prohibits admissibility. Nor does this offered evidence tend to establish a predisposition to fabricate a charge of rape, which is constitutionally required to be admitted. *See State v. Caswell*, 320 N.W.2d at 419.

■ The trial court did not err in admitting the statements complainant made to others about the assault. Such evidence is admitted for corroboration purposes and is not hearsay. *See State v. Hesse*, 281 N.W.2d 491, 492 (Minn.1979).

■ Evidence of Hagen's flight from the officers was admissible on the issue of consciousness of guilt. *State v. Givens*, 356 N.W.2d 58, 63 (Minn.Ct.App.1984). The presence of another motivation for flight does not render the evidence inadmissible, but is merely for the jury to weigh.

---

**2.** Having held that the rules of evidence permit the admission of this relevant evidence, we need not address Hagen's claim that excluding this

evidence violated his constitutional right to confront his accusers.

The trial court did not abuse its discretion by allowing impeachment evidence of Hagen's prior conviction for criminal damage to property. We cannot say the conviction had no probative value; the credibility of the defendant was a major issue in this case. *See State v. Amos,* 347 N.W.2d 498, 502–03 (Minn.1984).

## DECISION

The convictions on all counts are reversed. The case is remanded for a new trial in which the defendant will be permitted to introduce evidence of both BCA lab tests and complainant's inconsistent statements. The defendant will also be permitted to conduct proper cross-examination concerning the source of the semen limited to the morning during which the assault is alleged to have taken place.

Reversed and remanded for a new trial.