*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2018**

State of Minnesota,
Respondent,

vs.

Enamidem Celestine Okon,
Appellant.

**Filed August 4, 2014
Affirmed
Harten, Judge**[*]

Stearns County District Court
File No. 73-CR-12-6911

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Margaret M. Mitchell, Eaton & Mitchell, LLP, Owatonna, Minnesota (for appellant)

        Considered and decided by Johnson, Presiding Judge; Hooten, Judge; and Harten, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HARTEN**, Judge

Appellant challenges his conviction of aiding and abetting first-degree criminal sexual conduct, arguing that (1) his right to confront his victim was denied when the district court abused its discretion by excluding evidence of the number of sources of semen found on the victim's underwear; (2) the prosecutor opened the door to evidence of the victim's prior sexual conduct; (3) the district court erred in excluding evidence of the victim's prior employment as an escort; (4) the district court committed reversible error by failing to correctly define the "intentionally aiding and abetting" element of appellant's crime; (5) the prosecutor committed misconduct during closing argument; and (6) appellant is entitled to a new trial because of his trial counsel's cumulative errors. Because we see no abuse of discretion in the district court's exclusion of evidence, no error in its statement of the law, no prosecutorial misconduct, and no cumulative errors that would entitle appellant to a new trial, we affirm.

## FACTS

On 15 July 2012, C.M.J. reported to police that she had been orally and vaginally raped by Chukwudi Gregory Jideofor and appellant Enamidem Celestine Okon earlier that day. Appellant was charged with two counts: aiding and abetting first-degree criminal sexual conduct (sexual penetration—force or coercion with personal injury) and aiding and abetting first-degree criminal sexual conduct (sexual penetration—accomplice with force or coercion). In a separate proceeding, Jideofor had entered an *Alford* plea to

aiding and abetting first-degree criminal sexual conduct (sexual penetration—accomplice with force or coercion), and he agreed to testify against appellant.

At appellant's trial, Jideofor testified that (1) appellant arrived with C.M.J. at Jideofor's apartment about 3:00 a.m.; (2) C.M.J. sat on a bed; (3) appellant pulled up her dress, pulled down his pants, and tried to remove her underwear while she resisted; (4) appellant then pulled her head towards him and forced her to give him oral sex, which she also resisted; (5) appellant put on a condom and penetrated C.M.J. vaginally; (6) C.M.J. screamed and moaned, but could not get away because Jideofor was holding her down; (7) when appellant tried to penetrate C.M.J. anally, she screamed; (8) Jideofor removed his condom during the rapes, but appellant did not; (9) Jideofor could tell C.M.J. was in pain when he raped her vaginally; and (10) the men put pillows over C.M.J.'s face to stifle her screams so the neighbors would not hear her.

C.M.J. testified that: (1) because she needed a ride, she called appellant, with whom she was socially acquainted; (2) when appellant picked her up, she noticed that he was intoxicated and his driving was erratic; (3) appellant drove her to the apartment of Jideofor, whom C.M.J. had met previously and with whom she did not get along; (4) while C.M.J. was sitting on a bed, appellant grabbed her from behind and put a pillow over her face; (5) Jideofor pulled her underwear down and began raping her vaginally; (6) appellant, who had one hand around her throat, forced his penis into her mouth; (7) C.M.J. screamed and tried to push both men away, but was unable to do so because they held her down; (8) because C.M.J. was wearing a tampon, she experienced intense

3

pain during vaginal penetrations; (9) the two men continued to rape her for about an hour, switching positions so each could rape her both orally and vaginally; (10) the men at first wore condoms, but she thought that they removed them so they could ejaculate into her mouth; (11) one of the men unsuccessfully attempted to penetrate her anally; and (12) about 11 or 12 hours elapsed between the rapes and C.M.J.'s admission to the hospital.

The DNA forensic scientist testified that: (1) she received C.M.J.'s rectal and perioral swabs, the mattress cover from Jideofor's bed, and C.M.J.'s underwear, all of which were examined and found to contain semen[1]; (2) the rectal swab had insufficient material for DNA analysis; (3) part of the perioral swab containing only sperm cells indicated that Jideofor could not be excluded as the donor and that 99.9997% of the population, including appellant, could be excluded; (4) the part of the perioral swab containing all other material indicated that appellant could not be excluded as the donor, although 83.7% of the population could be excluded; (5) two areas on the mattress cover indicated that appellant could not be excluded as a sperm donor; (6) in one area, 72.4% of the population could be excluded, while in the other 44.5% could be excluded; (7) the underwear indicated that appellant was excluded as a donor of the sperm cells; (8) semen could be detectable in a vaginal swab for about five days and in a perioral swab for two to twelve hours; and (9) a condom would reduce the likelihood of semen being found.

---

[1] A forensic scientist and serologist testified that no semen was found on C.M.J.'s vaginal, oral, or perineal swabs.

The jury found appellant guilty on both counts and found two aggravating factors, namely personal injury and multiple forms of penetration, for each count. Appellant received the presumptive guideline sentence for aiding and abetting first-degree criminal sexual conduct (sexual penetration—accomplice with force or coercion).

Appellant, represented by different counsel on appeal, challenges his conviction, claiming that: (1) the exclusion of evidence as to the number of sources of semen found on C.M.J.'s underwear was an abuse of the district court's discretion and violated appellant's constitutional right to confront his victim; (2) the prosecutor opened the door to evidence of the victim's prior sexual conduct by introducing rectal swab and dissipation-of-semen evidence; (3) the district court erred in excluding evidence of C.M.J.'s prior employment as an escort; (4) appellant is entitled to a new trial because the jury instructions on the "intentionally aiding and abetting" and the "coercion" elements of the charges against him misstated the law; (5) appellant is entitled to a new trial because of prosecutorial misconduct in (a) implying that appellant belittled the victim, (b) misstating the evidence relating to Jideofor's *Alford* plea, and (c) using "we" statements to evoke the jury's sympathy; and (6) appellant is also entitled to a new trial because of his trial counsel's cumulative errors.

## D E C I S I O N

## 1.     Exclusion of Semen Evidence on Victim's Clothing

Appellant challenges the district court's exclusion of evidence that the semen on C.M.J.'s underwear came from five or more sources. "Evidentiary rulings rest within the

sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted). "When an error implicates a constitutional right, we will award a new trial unless the error is harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error." *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012) (citation and quotation omitted).

Appellant argues that evidence of the number of sources of semen on C.M.J.'s underwear was admissible to show that she engaged in sexual conduct with someone other than appellant close to the time of his offense. But, as the district court concluded, the issue was whether appellant had sex with C.M.J., whose identity was not questioned, and therefore "what [was] relevant [was whether] the DNA of any semen found matched [appellant's], not whether there was DNA found that matched the DNA of other persons."

Even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Minn. R. Evid. 403. "The right to present a defense is not unlimited; the admission of evidence of a witness's prior sexual conduct is highly prejudicial and will not survive a rule 403 balancing test unless a special exception applies." *State v. Olson*, 824 N.W.2d 334, 340 (Minn. App. 2012) (quotations and citations omitted), *review*

6

*denied* (Minn. 27 Feb. 2013). "Special circumstances" include evidence showing a predisposition to fabricate a charge of rape, *id.*, and "[evidence that] explains a physical fact in issue at trial, suggests bias or ulterior motive, or establishes a pattern of behavior clearly similar to the conduct at issue." *State v. Crims*, 540 N.W.2d 860, 868 (Minn. App. 1995) (emphasis omitted), *review denied* (Minn. 23 Jan. 1996). Because (1) appellant was not asserting consent as a defense; (2) the state was not offering evidence of appellant's semen on the underwear (there was no such evidence to offer); (3) none of the special exceptions applied; and (4) the evidence of other semen on the underwear was irrelevant to the issue of whether appellant had vaginal sex with C.M.J., the district court properly excluded that evidence.

Appellant relies on *State v. Hagen*, 391 N.W.2d 888, 890 (Minn. App. 1986) (concerning a victim who alleged that the defendant had raped her that morning, told hospital personnel she had last had intercourse 20 days earlier, and on examination showed semen that were neither her husband's nor the defendant's), *review denied* (Minn. 17 Oct. 1986). In *Hagen*, the defendant denied having any contact with the complainant on the date of the alleged rape, there was no evidence that he did have contact with her, and the only evidence linking the defendant to the alleged rape was the complainant's testimony. *Id.* at 892. Therefore, this court concluded that excluding evidence relevant to the complainant's credibility and her motive to fabricate was prejudicial. *Id.*

Here, there was evidence linking appellant to the assault: (1) he admitted that he was with C.M.J. that night; (2) C.M.J.'s account was corroborated by Jideofor; (3) C.M.J.'s pain and demeanor were observed by police and hospital staff; and (4) other DNA evidence on the mattress pad linked appellant to the crime. The district court did not abuse its discretion in excluding evidence of the sources of the semen found on the underwear.

**2.      Exclusion of the Sources of Semen**

Appellant argues that evidence of the number of sources of semen on C.M.J.'s underwear should have been admitted in rebuttal because the prosecutor opened the door to the presentation of that evidence.   Because appellant did not argue this to the district court, our standard of review is plain error.[2]  *See State v. Davis*, 735 N.W.2d 674, 681 (Minn. 2007) (holding that plain error is error that violated a law, rule, or standard of conduct); *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002) (setting out plain-error criteria as (1) an error (2) that is plain and (3) that affected the defendant's substantial rights, and noting that, if these criteria are met, the error will be corrected only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings).  The district court was not asked to admit this evidence in rebuttal, and appellant does not

---

[2] The state asserts that this issue is not properly before this court because appellant did not present it to the district court, and appellant did not refute this assertion.  Generally, an appellate court will not consider matters not argued to and considered by the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996).  However, in the interest of completeness, we address it.

allege that the district court should have done so sua sponte; therefore, appellant does not establish any error.

In any event, the state's presentation of evidence that the rectal swab did not provide conclusive DNA and that semen remains detectable for varying times in different body cavities did not "open the door" to evidence of the number of donors of the semen on C.M.J.'s underwear. "Opening the door occurs when one party by introducing certain material . . . creates in the opponent a right to respond with material that would otherwise have been inadmissible." *State v. Bailey*, 732 N.W.2d 612, 622 (Minn. 2007). Both C.M.J. and Jideofor testified that the attempt at anal penetration was unsuccessful, and the DNA analyst testified that the rectal swab contained no conclusive DNA evidence. Therefore, information about the sources of the semen on the underwear would have been irrelevant. Moreover, because no evidence was provided about how long semen remains detectable on clothing and the jury heard that the semen on C.M.J.'s underwear was not appellant's, evidence about the number of sources of such semen was also irrelevant.

No plain error occurred in not presenting evidence on the sources of the semen on the underwear as rebuttal evidence.

3.      **Exclusion of Testimony on Victim's Prior Employment**

The district court excluded evidence that C.M.J. had previously worked as an escort and met appellant as a client on the ground that the term "escort" would imply "possible involvement in prostitution, which in turn invokes notions about one's sexual history." Evidence of a victim's sexual history is irrelevant unless it explains a physical

9

fact at issue, suggests bias, or establishes a similar pattern of behavior. *See* Minn. R. Evid. 412; *Davis*, 546 N.W.2d at 32-34 (upholding exclusion of evidence of victim's hypothetical statement that she would trade sex for money because it "[fell] short of demonstrating a pattern of clearly similar behavior"); *Crims*, 540 N.W.2d at 867-68 (rape victim's sexual history as a prostitute was irrelevant because there was no showing of a similar pattern of behavior). Appellant's offer of proof did not include any specific prior acts, and neither C.M.J.'s lack of consent nor her pattern of behavior is at issue; appellant did not offer to show that C.M.J. was working as an escort on the night in question or that she had done so at any particular time.

Evidence that C.M.J. was an escort would have implied a particular sexual-conduct history, and evidence of a victim's previous sexual conduct is inherently prejudicial. *Davis*, 546 N.W.2d at 34. Moreover, the testimony from C.M.J. and Jideofor that C.M.J. was injured during the rapes would have outweighed any probative value of the evidence of C.M.J.'s employment history as an escort. *See Crims*, 540 N.W.2d at 868 (noting that evidence of the victim's struggle precluded the inference that the offense was merely another episode in her history of prostitution).

Appellant argues that the state "opened the door" to this evidence when the jury heard testimony that C.M.J. and appellant met on a social website and that C.M.J. was initially hesitant to report the incident to the police. But appellant did not object to this evidence at trial or ask the court to admit rebuttal evidence of C.M.J.'s job as an escort. In any event, neither evidence of the way appellant and C.M.J. met nor evidence that

C.M.J. worked as an escort would have rebutted the testimony of what appellant and Jideofor did to C.M.J. on 15 July 2012. There was no prejudice to appellant in its exclusion.

**4.    Jury Instructions: "Intentionally Aiding and Abetting" and "Coercion"[3]**

Because appellant's counsel did not object to the jury instructions, the standard of review is plain error. *See State v. Vance*, 734 N.W.2d 650, 655 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012); *Strommen*, 648 N.W.2d at 686 (setting out plain error criteria of an error that is plain and that affected the defendant's substantial rights and noting that, if the criteria are met, the error will be corrected only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings). "An instruction is in error if it materially misstates the law." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001). "[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Flores*, 418 N.W.2d 150, 155 (Minn. 1988).

**A.    "Intentionally Aiding and Abetting"**

At the beginning of the trial, the jury was instructed: "Aiding and abetting. [Appellant] is guilty of a crime committed by another person when [he] has intentionally aided the other person in committing it or has intentionally advised, hired, counseled,

---

[3]Appellant objects to the instructions for both count 1 and count 2 but, since he was adjudicated guilty and sentenced only on count 2, his objection to the instruction on count 1 is moot. *See State v. Ashland*, 287 N.W.2d 649, 650 (Minn. 1979) (appellate court need not decide on sufficiency of evidence on counts for which defendant was not formally adjudicated and sentenced).

conspired with, or otherwise procured the other person to commit it." This instruction was repeated at the end of the trial, when the jury was also instructed as follows on the elements of aiding and abetting first-degree criminal sexual conduct (sexual penetration—accomplice with force or coercion):

> First, [appellant] intentionally sexually penetrated [C.M.J.]
>
> . . . .
>
> . . . Second, the sexual penetration occurred without the consent of [C.M.J.].
>
> . . . .
>
> . . . Third, [appellant] was aided by Chukwudi Jideofor, an accomplice, in committing the act.
>
> Fourth, Chukwudi Jideofor, an accomplice of [appellant], used force or coercion to cause [C.M.J.] to submit. An accomplice is a person who aids another in the commission of a crime if he intentionally aids the other person or intentionally advises, hires, or requests the other person to commit it.
>
> . . . .
>
> . . . Intentionally means that the actor either has a purpose to do the thing or cause the result specified, or believes that the act performed by the actor, if successful, will cause the result. In addition, the actor must have knowledge of those facts that are necessary to make the actor's conduct criminal and that are set forth after the word intentionally.

To challenge the instruction on "intentionally aiding and abetting," appellant relies on *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012) (finding error when district court instructed jury as to "the elements of first-degree felony murder and attempted first-

12

degree felony murder, but . . . did not give a separate accomplice liability instruction or define 'intentionally'").

> [W]e conclude that under the instructions given, a reasonable jury would not necessarily understand that before it could find [the defendant] guilty of first-degree felony murder, it first had to find that [he] knew his alleged accomplices were going to commit a crime and that [he] intentionally assisted in that crime. This potential lack of understanding is due to the district court's failure to explain the "intentionally aiding" element to the jury. If the court had explained this element properly, the jury would have been instructed that under Minnesota law, the State had to prove beyond a reasonable doubt that Milton (1) knew his alleged accomplices were going to commit a crime, and (2) intended his presence to further the commission of that crime.

*Id.* at 806. Here, the jury was instructed on the meanings of both "accomplice" and "intentionally." Moreover, in *Milton*:

> [The defendant] failed to meet his heavy burden of proving that the district court's plain error affected his substantial rights. Therefore, even though we conclude that the court erred when it failed to instruct the jury on the "intentionally aiding" element of accomplice liability, we hold that this error does not warrant the grant of a new trial.

*Id*. at 810. Thus, the jury-instruction error in *Milton* did not occur here, and, if it had occurred, under *Milton* it would not warrant a new trial.

### B. "Coercion"

The jury was instructed that:

> The term coercion means that the use by [appellant] of words or circumstances that caused [C.M.J.] reasonably to fear that [appellant] will inflict bodily harm upon [C.M.J.] or the use by [appellant] of confinement or superior size or strength against [C.M.J.] that causes [C.M.J.] to submit to sexual

13

> penetration against [C.M.J.'s] will. Proof of coercion does
> not require proof of a specific act or threat.

The state concedes "that the coercion instruction should have referenced both [appellant] and the accomplice . . . ." Thus, because the coercion instruction applied only to appellant, the issue becomes whether this error affected appellant's substantial rights. *See Strommen*, 648 N.W.2d at 686. Substantial rights are affected if there is a "reasonable likelihood that the error had a significant effect on the verdict." *Vance*, 734 N.W.2d at 660 n.8.

There is minimal, if any, likelihood that the jury found appellant guilty because it had not heard that the use of coercion by Jideofor or by appellant was an element of the crime. Jideofor's testimony made it clear that he restrained C.M.J. and compelled her submission to appellant's penetration and was thus appellant's accomplice.

Appellant is not entitled to a new trial on the basis of error in the jury instructions.

5. **Prosecutorial Misconduct**

Because appellant did not state an objection to the district court on prosecutorial misconduct, the standard of review is plain error. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Under this standard, the state bears the burden of proving that there is no reasonable likelihood that the absence of the misconduct would have a significant effect on the jury's verdict. *Id.*

The prosecutor's rebuttal closing argument began:

> This is . . . my time to come back and talk and respond. And
> I'm glad I guess now that we know what we did wrong and
> what we should have done. We shouldn't believe a victim

because she's separating from her ex . . . despite the fact that they've been separated off and on for several years. All of this is made up. [C.M.J.] came in here, despite wanting to do any of this, not wanting to go through any of this, she decides to concoct all of this . . . . [W]e're just going [to] make all this up . . . be belittled in the courtroom. I'm going to make all this up so that that can happen to me.

When we talked you promised to be fair to the State and to [appellant]. There is a line in the instructions that you have and that line is that you are the trier of fact in this case. You also need to be fair to the facts. The facts are as you remember them.

Appellant argues that, by using this language, the prosecutor was "bolster[ing C.M.J.'s] credibility [and] suggesting to the jury that [appellant] should be punished for [his] further victimization of the victim by choosing to go to trial." But, when C.M.J. was asked why she waited so long after the rapes to go to the hospital, she replied that she didn't want to deal with law enforcement or go through "any of this," meaning the trial. The prosecutor pointed out that C.M.J. knew that getting the police involved was likely to result in a trial; C.M.J. had no motive to invent the rapes she reported or to imply that appellant should not have gone to trial.

Appellant also argues that it was misconduct for the prosecutor to use "we" to refer to himself and the jury. *See State v. Mayhorn*, 720 N.W.2d 776, 789-90 (Minn. 2006) (in a drug-dealing trial, prosecutor's statement to jury that "this is kind of foreign for all of us, I believe, because we're not really accustomed to this drug world and drug dealing" improperly described the prosecutor and the jury as a group of which the defendant was not a part). But an analysis of the prosecutor's language here shows that he used "we" to refer to himself and others involved in the state's handling of the

15

incident, not to himself and the jury, which he addressed as "you" a few sentences later. The only time the prosecutor used "we" to refer to himself and the jury was in saying, "When we talked . . . ," a reference to his conversations with jurors. That use of "we" did not imply that he and the jurors were in a group that excluded appellant.

Finally, appellant asserts that the prosecutor committed misconduct when he questioned Jideofor about his *Alford* plea. When the prosecutor asked Jideofor if he had been truthful with law enforcement, Jideofor had answered, "Not really." This exchange then occurred:

> Q. And you entered essentially . . . what's called an *Alford* plea where you essentially admitted that you'd be found guilty but didn't necessarily admit that you were, is that correct?
> A. Yes, sir.
> Q. Was that also somewhat of a lie?
> A. Come again, please?
> Q. Do you believe that you are guilty?
> A. At some point.

Appellant argues that Jideofor's responses "made it seem to the jury who was not properly instructed as to the definition of an *Alford Plea* . . . that [Jideofor] had not actual[ly] originally said at the plea hearing that [his] sex with C.M.J. was consensual, which he had." But the prosecutor informed the jury and Jideofor what an *Alford* plea was when he asked the question. Jideofor admitted in response to the prosecutor's questions that he had not always been honest. Appellant does not explain why this was prosecutorial misconduct.

Appellant has similarly not shown misconduct in the prosecutor's questioning of Jideofor, his use of the word "we," or his making the point that C.M.J. lacked any motive to fabricate the rapes. Even if there was misconduct, the state can meet its burden of showing that there is no reasonable likelihood that the absence of the misconduct would have had a significant effect on the jury's verdict because extensive testimony from the victim and the accomplice supported that verdict. *See Ramey*, 721 N.W.2d at 302.

## 6. Cumulative Errors

Appellant alleges that he is entitled to a new trial because of the cumulative effect of seven errors on the part of his trial counsel.

> The defendant must affirmatively prove that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quotations omitted). A claim of ineffective assistance is a mixed question of law and fact and is reviewed de novo. *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013).

Appellant alleges that seven errors were "all related to the crux of the trial": (1) failure to object to the exclusion of evidence on the multiple sources of semen on C.M.J.'s underwear and to her prior employment as an escort; (2) failure to properly cross-examine as to the absence of rectal-swab evidence; (3) failure to object to the jury instructions; (4) failure to impeach Jideofor; (5) failure to offer the transcript of

17

Jideofor's *Alford* plea into evidence; (6) failure to request an *Alford* plea jury instruction; and (7) failure to procure a note in the stipulation that Jideofor was offering an *Alford* plea. But all of these are matters of trial strategy, and appellate courts "do not second-guess trial counsel's decisions about trial strategy." *State v. Bahtuoh*, 840 N.W.2d 804, 818 n.3 (Minn. 2013); *see also State v. Doppler*, 590 N.W.2d 627, 633 (Minn. 1999) (decisions such as what evidence to present, what witnesses to call, what objections to make, and what information to include in opening and closing statements are left to counsel's discretion). Moreover, appellant does not show that, but for any or all of these alleged errors, the result of his trial would have been any different. *See Gates*, 398 N.W.2d at 561.

Appellant is not entitled to a new trial on the basis of his counsel's cumulative errors.

**Affirmed.**