STATE of Minnesota, Respondent,

v.

Edward Potter DOLBEARE, Appellant.

No. C1–93–573.

Supreme Court of Minnesota.

Jan. 28, 1994.

John M. Stuart, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., J. Michael Richardson, Asst. Hennepin County Atty., Minneapolis, for respondent.

SIMONETT, Justice.

A Hennepin County jury convicted defendant-appellant Edward Potter Dolbeare of first degree felony murder in the death of Russell Miller. On appeal, defendant Dolbeare alleges erroneous admission of testimony, an improper jury instruction and prosecutorial misconduct. We affirm.

Russell Miller lived alone in an apartment at the Calhoun Beach Club. On the evening of January 20, 1992, just before midnight, two women in the apartment below Miller's heard "crashing noises" coming from Miller's apartment. They heard a voice begging, "Please let me go. Please let me go," a crash, and then a hoarse voice say, "I'm sorry." They heard what sounded like someone having trouble breathing. After a minute or two, the breathing stopped. The two women went to the front desk of the club to get help. Eventually, the night manager and a janitor entered Miller's apartment. They found the apartment a mess and Miller dead.

A guest of a Calhoun Beach Club resident reported to the police that at 11:10 p.m. on January 20, as he was leaving the club, he noticed a young black man sitting in an old, rusted car in the parking lot. About an hour later when the guest returned, he noticed the car was still there, and he saw the young man, wearing polka dot shorts, walking toward the front lobby of the club. Because he suspected that this might be the person who had stolen a hubcap from his car three weeks earlier, he wrote down the license number of the car, which turned out to be registered to defendant Dolbeare's father. The night manager reported to the police that at 12:05 on the morning of the 21st, a young man wearing polka dot shorts and carrying a garbage bag got off the elevator in the lobby of the club, where he met another young man wearing polka dot shorts, and that the two had left the club together.

The police suspected that whoever had been in Miller's apartment had stolen his credit cards, and they alerted local merchants. Before the day was over, the police arrested defendant at a department store where he was attempting to use one of Miller's credit cards. Defendant was wearing one of Miller's jackets and Miller's designer shoes. Also arrested was defendant's cousin, Derrick Green, who was with defendant.

Defendant's initial story was that he had found Miller's credit cards in a restroom. After the police told him that his father's car had been seen in the Calhoun Beach Club

parking lot the previous evening and that his father had told police that defendant had the car that night, defendant admitted that he killed Miller.

In a formal statement, defendant said that he and Derrick Green had gone to the Calhoun Beach Club to steal meat from a freezer in the club's restaurant. Defendant went inside while Green waited in the car. Finding the freezer locked, defendant said he decided to look around the club. When he found the door to Miller's apartment open, he went in and began looking in Miller's closets, at which time Miller attacked him with a knife. The two men wrestled, and Miller fell on the knife. Defendant stated that Miller lay on the floor, bleeding from the face or chest, trying to move and coughing; but that when he noticed Miller was no longer moving, he stayed in the apartment for 20 to 25 minutes. Defendant further stated that he put some of Miller's clothes in a plastic bag and took Miller's billfold, and then wrote "KKK" and "nigger lover" with a marker on the wall to throw off the police. Despite stating earlier that Miller had stopped moving, defendant said that when he left the apartment Miller was still moving and making sounds. Defendant then met Green in the Calhoun Beach Club lobby and went home. Defendant said he had been drinking that evening and felt slightly intoxicated, but that he did not mean to kill anyone.

At trial, the state offered the testimony of an assistant medical examiner who examined Miller's body in the apartment on the morning of January 21 and performed an autopsy later that day. His opinion was that the knife wounds on Miller's neck were inflicted after Miller died. In the examiner's opinion, Miller died from blows delivered to his neck and chest, possibly made by a slugging or stomping motion, which fractured the larynx and caused Miller slowly to asphyxiate. A patterned area on Miller's chest and neck was consistent with the blows being delivered by the sole of a shoe. There were also lacerations on the top of Miller's head that extended all the way to the surface of the skull; these cuts were consistent with Miller's head being repeatedly struck against a flange that held a gas pipe to the kitchen wall in Miller's apartment.

Evidence was received that Dolbeare had previously stolen food from the Calhoun Beach Club and that he had committed a robbery at the club on January 15, 1992. It was also shown that a man by the name of Scott Beecham had checks stolen from his apartment at a different location on January 17, 1992, and that defendant Dolbeare had possession of five of these checks (plus Beecham's driver's license) and had forged the checks to purchase merchandise. Additionally, the state called as a witness a bank teller, who testified that on January 21 she cashed a check on Russell Miller's account for $150, payable to Scott Beecham and dated January 20, 1992. A documents examiner testified that it was Miller's writing on the check, that the writing had a "very agitated, erratic flow," and that the endorsement of Scott Beecham was in defendant Dolbeare's handwriting.

Defendant's formal statement of January 21, 1992, was received in evidence, as was a second formal statement he gave on January 23. In his second statement, defendant admitted that Miller might have hit his head on the stove or on the floor when they were wrestling. He admitted kicking Miller twice in the chest or neck. He said Miller gave him the credit cards because he was afraid that defendant was going to rob him. Defendant again denied that he intended to kill Miller, and he denied robbing the bartender at the Calhoun Beach Club. In a later interview with the police, defendant claimed to have found Beecham's checks and driver's license in a hallway. He denied that he had forged any of Beecham's checks.

To counter defendant Dolbeare's claim that Miller attacked him and that he had killed Miller in self-defense, the state offered the testimony of two people, one a friend of Miller's and the other his longtime employer. The friend testified that Miller was a gentle, nonaggressive person who avoided conflict. The employer testified that Miller was non-confrontational and recounted two instances where Miller, when he felt threatened by a customer, had called the police.

The state also called Derrick Green. Green stated that, on the night of January 20, 1992, he and defendant drove to the Calhoun Beach Club, because defendant said he was supposed to meet someone there. Defendant said he would be back in a few minutes and went into the building. After 25 minutes or so, Green testified, he got restless and entered the club, met defendant Dolbeare in the lobby, and they then left. Green said he asked defendant about the garbage bag he was carrying, and defendant said he got it from an apartment. Green testified he asked defendant why he was breathing hard, and defendant replied that he "got into a little tussle," and he thought he had killed someone. After presentation of the state's case, the defense rested without presenting any witnesses.

1. Defendant Dolbeare first contends that the trial court committed reversible error by allowing the state to introduce evidence of other crimes. We think not.

■ Defendant claims it was error to admit evidence of his involvement in the previous crimes at the Calhoun Beach Club and in the Scott Beecham burglary. The state argues that evidence of the Calhoun Beach Club crimes was relevant to show Dolbeare's familiarity with the club, his method of operation, and his intent to commit the predicate crime of burglary. We do not think it can be said that the trial judge erred in ruling this evidence admissible for these limited *Spreigl* purposes.

■ It is less clear to us why the state put in evidence that Scott Beecham's apartment had been burglarized by someone and that Dolbeare had forged Beecham's checks. We have difficulty seeing the relevance of this testimony. Arguably, defendant's possession of Beecham's checks was evidence that defendant burglarized Beecham's apartment, but the state does not make this claim. We think this evidence should not have been received, but having in mind the strong evidence of guilt, we conclude the error was harmless.

2. Defendant Dolbeare next claims that the judge committed reversible error by giving the jury the wrong self-defense instruction. We disagree.

■ The instruction submitted was based, in part, on CRIMJIG 7.05, which is captioned "Self defense—causing death." 10 Minn. Dist. Judges Ass'n, *Minnesota Practice*, CRIMJIG 7.05 (3d ed. 1990). The other pattern instruction on self defense is CRIMJIG 7.06, which is captioned "Self defense—death not the result." *Id.* 7.06. In *State v. Marquardt*, 496 N.W.2d 806, order denying petition for review (Minn.1993), *aff'g State v. Marquardt*, No. C5–92–985 (Minn.App. Jan. 5, 1993) (unpublished opinion), we said that even where death has resulted from a defendant's action, the judge should use CRIMJIG 7.06 if the defendant's theory does not include a concession that there was an intent to kill. Because he does not concede that he intended to kill Miller, defendant contends that CRIMJIG 7.06 should have been used. The defense, however, did not object to the self-defense instruction that was given. Failure to challenge a jury instruction at trial waives the right to appeal that issue unless the error is one of fundamental law and results in substantial and material prejudice to a defendant's rights. *Peterson v. State*, 282 N.W.2d 878, 881 (Minn.1979).

■ We find no basis for reversible error here; indeed, the defendant may not have been entitled to a self-defense instruction as it is very questionable that defendant carried his burden of going forward and producing evidence which would support a claim of self-defense. *See State v. Graham*, 371 N.W.2d 204, 209 (Minn.1985). In any event, the instruction that was given speaks of a defendant's "election to defend," not an "election to kill," and in the context of this case, with the ample evidence of defendant's guilt, we are satisfied that the use of CRIMJIG 7.05 did not confuse the jury. *See State v. Angulo*, 471 N.W.2d 570, 574 (Minn.App.1991), *pet. for rev. denied* (Minn., Aug. 2, 1991) (use of "election to defend" rather than "election to kill" reduces the likelihood of jury confusion when CRIMJIG 7.05 is improperly used).

3. Finally, defendant Dolbeare argues that the prosecutor committed misconduct in her closing argument. We have carefully

reviewed the record and find the claims of prosecutorial misconduct to be without merit.

Affirmed.