*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0107**

State of Minnesota,
Respondent,

vs.

Thomas Yunmie Quiwonkpa,
Appellant.

**Filed December 7, 2015
Affirmed
Hooten, Judge**

Ramsey County District Court
File No. 62-CR-14-4237

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, Eagan, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Chutich, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

On appeal from his convictions of violation of a domestic abuse no contact order (DANCO) and felony domestic assault, appellant argues that the district court committed

reversible error by (1) admitting highly prejudicial evidence of his prior acts of domestic abuse, and (2) not allowing him to present the video recording of his statements to police when he was arrested.  We affirm.

**FACTS**

Appellant Thomas Yunmie Quiwonkpa was charged with a DANCO violation, felony domestic assault, and domestic assault by strangulation arising out of an incident on June 10, 2014.  A jury trial was held in September 2014.  Viewed in the light most favorable to the convictions, the following facts were established at trial.

Appellant and D.S. had been romantically involved since 2008 and are the parents of two children.  Their relationship had a history of domestic abuse.  In 2010, appellant strangled D.S., slammed her against a wall, and called her a "bitch."  In 2011 and 2012, appellant was not allowed to have any contact with D.S. because a DANCO was in effect against appellant, but appellant violated the DANCO in 2012.  In July 2013, appellant punched and strangled D.S.  In June 2014, another DANCO was in effect against appellant, which prohibited appellant from having any contact with D.S.

On June 9, 2014, D.S. and appellant went to the home of appellant's mother.  D.S. stayed overnight there with appellant in appellant's bedroom.  On the morning of June 10, while still in appellant's bedroom, appellant and D.S. got into an argument about gas money for D.S.'s car.  The argument became physical, and appellant assaulted D.S. by punching her and grabbing her neck.  The boyfriend of appellant's mother broke up the fight, and D.S. left the house and reported the incident to police.

2

The jury found appellant guilty of a DANCO violation and felony domestic assault, but found him not guilty of domestic assault by strangulation. The district court sentenced appellant to a prison term of one year and one day. This appeal followed.

## D E C I S I O N

### I.

Appellant argues that the district court abused its discretion by admitting evidence of appellant's prior acts of domestic abuse against D.S. "Evidentiary rulings rest within the discretion of the trial court and will not be reversed absent a clear abuse of discretion." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006).

In cases involving domestic abuse, Minn. Stat. § 634.20 (Supp. 2013) governs the admissibility of evidence of the defendant's prior domestic abuse. *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004). "Evidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice . . . ." Minn. Stat. § 634.20. Such evidence is commonly referred to as "relationship evidence." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). "'Domestic conduct' includes, but is not limited to, evidence of domestic abuse, violation of an order for protection," and "violation of a harassment restraining order . . . ." Minn. Stat. § 634.20. "Domestic abuse" includes "physical harm, bodily injury, or assault" committed against "a family or household member by a family or household member." Minn. Stat. § 518B.01, subd. 2(a)(1) (2012). "Family or household members" include "persons who have a child in common." *Id.*, subd. 2(b)(5) (2012).

3

Over defense counsel's objection, the district court allowed the state to admit evidence of appellant's prior acts of domestic abuse against D.S. and appellant's 2012 DANCO violation. The district court warned the prosecutor that this relationship evidence had to be "limited to what the conviction[s] [were] for" and added, "We're not retrying those cases." D.S. testified that she and appellant were caught in a "cycle" of domestic abuse. She acknowledged a 2010 incident where appellant punched and choked her, slammed her against a wall, and called her a "bitch." She testified that a DANCO was in place against appellant in 2011 and 2012, and that appellant violated the DANCO in 2012. D.S. also testified that appellant punched and strangled her in July 2013 at her residence. When the prosecutor asked, "[I]s it difficult to keep track of the times you've called police for them to come and assist you?" D.S. replied, "Yeah."

Appellant does not dispute that the admitted evidence is evidence of "domestic conduct" under Minn. Stat. § 634.20. His sole argument on appeal is that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice.

We conclude that the probative value of the relationship evidence in this case was high. *See State v. Meyer*, 749 N.W.2d 844, 850 (Minn. App. 2008) ("Minnesota courts have recognized the inherent probative value of evidence of past acts of violence committed, as here, by the same defendant against the same victim."). Relationship evidence "illuminates the history of the relationship between a victim and the accused" and "put[s] the crime charged in the context of the relationship between the two." *McCoy*, 682 N.W.2d at 159. D.S.'s testimony about appellant's prior acts of domestic abuse put the current charges into the context of a relationship characterized by cyclical

domestic abuse. Without this testimony, the jurors might have had difficulty understanding their relationship. D.S. testified that she wanted to stop being a victim after the 2010 incident but that, despite the ongoing abuse and the DANCOs, she continued to have contact with appellant because she wanted him to be able to see their children. She testified that, at the time of trial, she was reluctant to "go against" appellant.

Appellant argues that the state's case was strong and therefore the state's need for the relationship evidence was low. This argument is unpersuasive. Relationship evidence can assist the jury "by providing a context with which it [can] better judge the credibility of the principals in the relationship." *Id.* at 161. D.S.'s credibility was important to the state's case for several reasons. First, D.S. was the state's sole eyewitness to the assault, yet she was a hostile witness for the state. She testified for the state only because she was under subpoena, she refused to review police reports, and at one point during her testimony she asked whether she could "excuse [herself] from the courtroom." Second, D.S. tried to minimize appellant's abusive conduct on June 10, 2014, by stating that they fought each other. Third, D.S.'s testimony contradicted some of her statements to the police officer who interviewed her on the day of the assault. For example, she told police that appellant strangled her during the assault, but at trial she claimed he did not. Fourth, the boyfriend of appellant's mother testified on behalf of appellant, and his testimony contradicted D.S.'s account of the events on June 10, 2014. These inconsistencies and competing stories tended to weaken the state's case, and the relationship evidence provided support for the state's claim that D.S.'s version of the

incident at the time she first reported it to police was more credible than the version she presented at trial.

We conclude that the danger of unfair prejudice of the relationship evidence in this case was low. "When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *Bell*, 719 N.W.2d at 641 (quotation omitted). A district court's cautionary instruction "lessen[s] the probability of undue weight being given by the jury to the evidence." *State v. Lindsey*, 755 N.W.2d 752, 757 (Minn. App. 2008) (quotation omitted), *review denied* (Minn. Oct. 29, 2008). Here, the district court gave the jury a cautionary instruction both immediately prior to D.S.'s testimony about the relationship evidence and during final instructions. The district court instructed the jury that the relationship evidence was being offered only for the "limited purpose" of shedding light on the relationship between appellant and D.S. and warned the jury that it could convict appellant only for the charged conduct, not for any past conduct. "[Appellate courts] presume that jurors follow the [district] court's instructions." *State v. Budreau*, 641 N.W.2d 919, 926 (Minn. 2002). Defense counsel reinforced this cautionary instruction during his closing argument. Moreover, as the state points out, the jury acquitted appellant of domestic assault by strangulation, which strongly suggests that the jury convicted appellant of the other two charged offenses based only on his conduct on June 10, 2014.

6

Because the probative value of the relationship evidence was not substantially outweighed by the danger of unfair prejudice, the district court did not abuse its discretion in admitting the relationship evidence.

## II.

In order to bolster his defense that he did not have any contact with D.S. on the date of the assault, appellant sought to admit evidence of his alleged "surprised demeanor" when he was arrested by introducing the statements he made to the arresting officer. The district court allowed defense counsel to introduce these statements while cross-examining the arresting officer, but did not allow defense counsel to play for the jury a portion of the squad car video that contained the statements. The district court did not allow defense counsel to publish the video because it concluded, after viewing the video, that doing so would be "duplicative and a waste of the jury's time."

The following exchange took place between defense counsel and the arresting officer on cross-examination:

> Q: [Y]ou expressed your opinion that you didn't feel [appellant] was surprised when he was arrested, correct?
> A: Yes, sir.
> Q: But isn't it true that after his arrest he expressed his surprise to you?
> A: He never directly said I'm surprised from my recollection.
> Q: Did he say man, what is going on?
> A: I believe so.
> Q: Did he say what am I being arrested for?
> A: Yes, he asked that question.
> Q: Did he ask you why am I under arrest?
> A: My best recollection, yes. He asked that question.
> Q: And did he say this doesn't make sense, sir?
> A: I believe, from my recollection yes he said that.
> Q: And he told you he was home all day, correct?

A: Yes, sir.

On appeal, appellant argues that the district court abused its discretion by not allowing defense counsel to present the video recording of his statements. He claims that the exclusion of this evidence infringed upon his right to present a complete defense.

"Every criminal defendant has a right to fundamental fairness and to be afforded a meaningful opportunity to present a complete defense." *State v. Crims*, 540 N.W.2d 860, 865 (Minn. App. 1995) (quotation omitted), *review denied* (Minn. Jan. 23, 1996). "The right to present a defense includes the opportunity to develop the defendant's version of the facts, so the jury may decide where the truth lies." *Id.* But, this right is not without limits, and the defendant must comport with the rules of evidence. *State v. Richards*, 495 N.W.2d 187, 195 (Minn. 1992).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. But, evidence that is otherwise relevant "may be excluded if its probative value is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. R. Evid. 403.

Appellant argues that the video was not cumulative because "[h]earing the police officer admit [that] appellant made the statements simply is not the same as actually seeing appellant, hearing his confused and questioning tone[,] and observing his body language and facial expressions." We disagree. The video was marked as a court exhibit and is thus part of the record on appeal. Minn. R. Civ. App. P. 110.01. Defense counsel

8

sought to play the first four minutes of the video, during which appellant is escorted to the squad car and placed in the backseat of the squad. The first two minutes of the video show appellant being escorted to the squad. Once inside the squad, appellant's face comes in and out of the frame, and his facial expressions while speaking can only be seen when he asks, "Sir, why am I being arrested though?" With regard to the other discussion between appellant and the police officer in the first four minutes, appellant's face is not in view of the camera because he is leaning forward while speaking to the officer, which makes it difficult to assess his body language or facial expressions when he makes the statements questioning his arrest. Although the audio portion of the video does reveal appellant's tone of voice, this additional evidence is of limited probative value where appellant's statements in the video are not materially different from what defense counsel elicited through the officer on cross-examination. The district court did not abuse its discretion by concluding that it would be a waste of time and a needless presentation of cumulative evidence to show the video and that these considerations substantially outweighed any probative value of the video. *See State v. Buchanan*, 431 N.W.2d 542, 551 (Minn. 1988) (holding there was no abuse of discretion where excluded evidence duplicated other evidence and was thus cumulative and delaying).

Even if the district court erred in excluding this evidence, any error was harmless because it did not "substantially influence[] the jury's decision." *State v. DeShay*, 669 N.W.2d 878, 888 (Minn. 2003) (quotation omitted). As discussed in the next section, there was substantial evidence supporting the convictions. Moreover, the exclusion of the video did not affect appellant's right to present a complete defense for several

9

reasons. First, appellant's statements at the time of his arrest were received into evidence through defense counsel's cross-examination of the officer. Second, defense counsel cross-examined the officer regarding his failure to check D.S.'s phone records from the date of the assault, even though D.S. told the officer on that date that appellant had called repeatedly after the assault. Third, defense counsel cross-examined D.S. and impeached her credibility with a prior recantation of a domestic-assault allegation. Fourth, defense counsel presented testimony from the boyfriend of appellant's mother, who claimed that appellant did not assault D.S. and who contradicted D.S.'s claims that she spent the night with appellant on June 9 and had contact with him on June 10. Based upon this record, appellant was not inhibited in his defense or prejudiced by the exclusion of the four-minute video.

### III.

In his pro se supplemental brief, appellant argues that (1) the evidence was insufficient for the jury to convict him of a DANCO violation and felony domestic assault, and (2) the district court erred by allowing the state to impeach appellant under Minn. R. Evid. 609. These arguments lack merit.

When reviewing the sufficiency of the evidence, we undertake "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient" to support the conviction. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). "[W]e will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the [appellant] was

10

guilty of the charged offense." *Id.* The facts as presented in the facts section are viewed in the light most favorable to the guilty verdicts.

The DANCO statute provides that whoever violates a DANCO "within ten years of the first of two or more previous qualified domestic violence-related offense convictions" is guilty of a felony. Minn. Stat. § 629.75, subd. 2(d) (Supp. 2013). Prior to trial, appellant stipulated that he had at least two prior qualified domestic violence-related convictions within the statutory time period. At trial, the officer testified that there was a DANCO in effect against appellant in June 2014, which had been served upon appellant. And, D.S. testified that she had contact with appellant on June 9 and June 10. When viewed in the light most favorable to the guilty verdict, the evidence at trial established that appellant violated the DANCO by having contact with D.S.

The domestic assault statute provides that whoever intentionally inflicts bodily harm upon a family or household member "within ten years of the first of any combination of two or more previous qualified domestic violence-related offense convictions" is guilty of a felony. Minn. Stat. § 609.2242, subds. 1, 4 (2012). As noted above, appellant stipulated to the prior convictions. D.S. is a "family or household member" within the meaning of the statute because she and appellant have children in common. Minn. Stat. § 518B.01, subd. 2(b)(5). At trial, D.S. testified that appellant punched her and grabbed her neck on June 10, 2014. The jury also heard the audio of D.S.'s 911 call, in which she stated that appellant punched her head, pulled her hair, and scratched her neck. Moreover, the jury viewed photographs of D.S. taken on the date of the assault, which showed fresh scratch marks on D.S.'s neck, consistent with her

11

reported injuries. Viewed in the light most favorable to the guilty verdict, the evidence at trial established that appellant intentionally inflicted bodily harm upon D.S. on June 10, 2014.

Finally, appellant asserts that the district court erroneously admitted evidence of appellant's prior acts of domestic abuse under Minn. R. Evid. 609, but appellant is mistaken. As analyzed above in Part I, the district court properly admitted relationship evidence under Minn. Stat. § 634.20.

**Affirmed.**