STATE of Minnesota, Respondent,

v.

Natalie Jonelle POLLARD, Appellant.

A16-1005

Court of Appeals of Minnesota.

Filed July 10, 2017

Lori Swanson, Attorney General, St. Paul, Minnesota; and John Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent).

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by Jesson, Presiding Judge; Bratvold, Judge; and Smith, John, Judge.*

SMITH, JOHN, Judge

## OPINION

Appellant was found guilty of second-degree felony murder for acts that resulted in her boyfriend's death. On appeal, she argues that the trial resulting in her conviction was unfair and that she should be given a new trial. Specifically, she argues that the district court erred in its instruction on self-defense. Appellant also argues that she is entitled to a new trial based on misconduct by the prosecution and evidentiary errors. We reverse appellant's conviction and remand to the district court for a new trial. In addition, we deny the state's motion to strike arguments from appellant's reply brief.[1]

## FACTS

Police arrested appellant Natalie Pollard after responding to an emergency call she made on July 2, 2015. In her call to police, appellant reported that her boyfriend, O.N., had broken into her house and was in her basement. Appellant reported that O.N. needed medical attention because he had been cut in a fight. Upon arrival,

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The state moved to strike arguments from appellant's reply brief for exceeding the scope permitted by Minn. R. Civ. App. P. 128.02, subd. 3. The arguments contained within appellant's reply brief were confined to responding to the new matters raised in the state's brief. We therefore deny the state's motion.

police found O.N. unconscious in the basement with a puncture wound in his chest.

Appellant initially told the police that O.N. had produced a knife during a fight in the basement of her townhome. Appellant told an investigator that she had discovered O.N. attempting to enter her townhome. Appellant let O.N. into the townhome, and the two went to the basement for O.N. to retrieve his things. She told the investigator that O.N. attempted to strike her and the two began to fight. She told the investigator that O.N. had a knife in his hand and that she attempted to turn O.N.'s wrist away from her and toward O.N. during the fight. Appellant told the investigator that she fell and that O.N. got on top of her. She said that O.N. placed his knee on her chest and tried to strangle her. She said that she was able to move O.N. from on top of her, he fell, and she ran upstairs and called the police. Appellant told the investigator that O.N. pulled on her hair extensions during the fight, and that they came out as she was running away.

Appellant later admitted that although the knife belonged to O.N., she had brought it with her to the basement. Appellant said that she thought she needed the knife for protection because O.N. frequently came to her house angry. She told the investigator that she held the blade open and behind her back when they went to retrieve O.N.'s items from the basement. Appellant admitted that she was holding the knife when O.N. attempted to hit her, and that she swung the knife at him while they were fighting. She told the investigator that she was trying to protect herself from being hurt, because it was not the first time that O.N. had hit her. She told the investigator that she fell during the fight and O.N. got on top of her, at which point the knife flew from her hand. She was able to get up, grab the knife, and

run up the stairs. She admitted to throwing the knife in the kitchen garbage. She told the investigator that she did not know if she cut or stabbed O.N., but, if she did, it was accidental because he would not stop attacking her.

Appellant was charged with intentional second-degree murder and second-degree felony murder. Appellant asserted self-defense and defense of dwelling. At trial, the state introduced evidence of the couple's strained relationship, including witnesses who testified about an incident from several weeks prior to O.N.'s death, in which appellant allegedly struck O.N. with her car and yelled that she was going to kill him. Appellant did not testify, but a recording of appellant's interview at the police station was played to the jury. Appellant introduced evidence demonstrating that O.N. had previously struck her in the face, and that she had sought medical treatment after being assaulted.

Appellant requested the general self-defense instruction provided in CRIMJIG 7.05. See 10 Minnesota Practice, CRIMJIG 7.05 (2015) (providing jury instruction for "self-defense—generally"). The state requested the self-defense instruction concerning the taking of a life, as provided in CRIMJIG 7.06. See 10 Minnesota Practice, CRIMJIG 7.06 (2015) (providing jury instruction for "self-defense—justifiable taking of life"). In arguing for CRIMJIG 7.06, the state cited comments to CRIMJIG 7.06 which indicate that it is the appropriate instruction for self-defense cases in which the defendant has not admitted to intentionally killing the decedent. Relying on State v. Hare, 575 N.W.2d 828, 828 (Minn. 1998), the district court agreed with the state and ruled that CRIMJIG 7.06 would be provided to the jury, because, "for focusing on death as a result of defense, . . . the more general instruction of 7.06 is likely to better fit the case."

The district court instructed the jury, in accordance with the justifiable-taking-of-life instruction, that "[n]o crime is committed when a person takes the life of another, even intentionally, if the person's action was taken in resisting or preventing an offense the person reasonably believed exposed her to death or great bodily harm." The jury was instructed that (1) appellant had to have acted "in the belief that it was necessary to avert death or great bodily harm"; (2) appellant's judgment as to the gravity of the peril had to be reasonable; and (3) appellant's election to defend herself had to be "such as a reasonable person would have made in light of the danger perceived and the existence of any alternative way of avoiding the peril." The jury was instructed that all elements of self-defense must be met in order for the defense to apply and that the burden was on the state to prove beyond a reasonable doubt that appellant did not act in self-defense. The district court also instructed the jury on defense of dwelling.

The jury returned a guilty verdict on the charge of second-degree felony murder. Appellant was acquitted of intentional second-degree murder.

This appeal followed.

## ISSUE

Did the district court commit reversible error when it instructed the jury using the justifiable-taking-of-life instruction instead of the general self-defense instruction?

## ANALYSIS

■ "We review a district court's jury instructions for an abuse of discretion," and recognize that the district court has "considerable latitude in selecting jury instructions." *State v. Peltier*, 874 N.W.2d 792, 797 (Minn. 2016). We review the jury instructions in their entirety to determine if they "fairly and adequately explain the law." *Id.*; *State v. Kuhnau*, 622 N.W.2d 552, 555-56 (Minn. 2001). An instruction is in error if it materially misstates the law, or confuses or misleads the jury on fundamental points of law. *State v. Larson*, 787 N.W.2d 592, 601 (Minn. 2010); *State v. Ihle*, 640 N.W.2d 910, 916 (Minn. 2002).

Minnesota law permits the use of reasonable force against another in certain circumstances. Minn. Stat. § 609.06, subd. 1 (2014). A person may use reasonable force when it is "used . . . in resisting or aiding another to resist an offense against the person." Minn. Stat. § 609.06, subd. 1(3). The elements of self-defense under section 609.06, subdivision 1(3), are

(1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of . . . bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014) (quotation omitted). The defense of self or another under section 609.06, subdivision 1(3), is currently reflected in the jury instruction in CRIMJIG 7.05.

■ Section 609.06 does not permit a person to intentionally take a life of another unless certain conditions are met. Minn. Stat. § 609.065 (2014). A person may intentionally take a life when it is "necessary in resisting or preventing an offense which the actor reasonably believes exposes the actor or another to great bodily harm or death, or preventing the commission of a felony in the actor's place of abode." *Id.* The use of deadly force in self-defense is justified under sections 609.06 and 609.065, if the following factors are satisfied:

(1) The killing must have been done in the belief that it was necessary to avert

death or grievous bodily harm. (2) The judgment of the defendant as to the gravity of the peril to which he was exposed must have been reasonable under the circumstances. (3) The defendant's election to kill must have been such as a reasonable man would have made in light of the danger to be apprehended.

*State v. Edwards*, 717 N.W.2d 405, 413 (Minn. 2006) (citing *State v. Austin*, 332 N.W.2d 21, 24 (Minn. 1983)); *see also State v. Johnson*, 719 N.W.2d 619, 629 (Minn. 2006) (describing the four elements of self-defense in a homicide case as (1) the absence of aggression or provocation; (2) an actual and honest belief of imminent danger of death or great bodily harm; (3) reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat). The justifiable-taking-of-life defense under section 609.065 is currently reflected in CRIMJIG 7.06.

The Minnesota Supreme Court has repeatedly stated that it is error to provide the justifiable-taking-of-life instruction, instead of the general self-defense instruction, when the defendant asserts self-defense but claims that the death was not the intended result. *See State v. Carridine*, 812 N.W.2d 130, 143-44 (Minn. 2012) (concluding that the justifiable-taking-of-life instruction was given in error where the defendant's defense was that the death was unintended); *Hare*, 575 N.W.2d at 832-33 (concluding that the "self-defense—causing death" instruction was given in error where the defendant claimed the death was accidental); *State v. Robinson*, 536 N.W.2d 1, 2-3 (Minn. 1995) (concluding that the instruction was given in error where the defendant claimed the death was accidental); *State v. Marquardt*, 496 N.W.2d 806, 806 (Minn. 1993) (noting that the general self-defense instruction should be given, or the justifiable-taking-of-life instruction modified, if the defendant

claims that he did not intend to kill the victim); *see also State v. Dolbeare*, 511 N.W.2d 443, 446 (Minn. 1994) ("[E]ven where death has resulted from a defendant's action, the judge should use [the general instruction] if the defendant's theory does not include a concession that there was an intent to kill."); *State v. Sanders*, 376 N.W.2d 196, 201 (Minn. 1985) (noting that an instruction that " 'the killing must have been done in the belief that it was necessary to avert death or great bodily harm' is language that would better fit a case in which the defendant claimed he intentionally killed in self-defense"); *State v. Edwards*, 343 N.W.2d 269, 277 (Minn. 1984) (providing that the general self-defense instruction was properly provided to the jury, rather than the justifiable-taking-of-life instruction, as "[t]he latter is useful only when the death was intended"); *State v. Fidel*, 451 N.W.2d 350, 355 (Minn. App. 1990) (noting that the general self-defense instruction "is the appropriate self-defense standard for second-degree felony murder"), *review denied* (Minn. Apr. 13, 1990).

■ The state contends that the use of the justifiable-taking-of-life instruction in this case was based on a misreading of *Hare*, which directs district courts to use CRIMJIG 7.06 in cases where the defendant claimed that the resulting death was unintentional. *See Hare*, 575 N.W.2d at 833 (providing that "CRIMJIG 7.05 is inappropriate" and "CRIMJIG 7.06 is likely to better fit the facts" of a case in which the defendant claims the death was an unintended consequence of self-defense).

In 2015, the Minnesota District Judges Association made modifications in the CRIMJIG instructions which resulted in the instruction numbers for self-defense and justifiable taking of a life being switched. *Compare* 10 *Minnesota Practice*,

CRIMJIG 7.05 ("justifiable taking of life"), .06 ("self-defense—death not the result") (Supp. 2014), *with* 10 *Minnesota Practice*, CRIMJIG 7.05 ("self-defense—generally"), .06 ("self-defense—justifiable taking of life") (2015). The prior version of CRIMJIG 7.05, the then-existing justifiable-taking-of-life instruction, included comments and a footnote recommending the use of CRIMJIG 7.06, the then-existing general self-defense instruction, in cases where the defendant claimed the death was not intended. *See* 10 *Minnesota Practice*, CRIMJIG 7.05 n.1, cmt. (2006 & Supp. 2014) (providing cases in which the Minnesota Supreme Court has expressed a preference for the use of CRIMJIG 7.06 where the death was not intended, and noting that "CRIMJIG 7.06 may be more appropriate" in those cases).

Although, the 2015 version of the criminal jury instruction guide has renumbered the justifiable-taking-of-life instruction as CRIMJIG 7.06, it continues to include the same footnote and case descriptions recommending the use of CRIMJIG 7.06 in cases where the defendant claimed the death was unintended. *See* 10 *Minnesota Practice*, CRIMJIG 7.06 n.1, cmt. (2015). It does so despite the general self-defense instruction having been renumbered as CRIMJIG 7.05. *See* 10 *Minnesota Practice*, CRIMJIG 7.05 (2015). The comment in the current version of the justifiable-taking-of-life instruction now suggests that the justifiable-taking-of-life instruction is the proper instruction to be used in cases where the death was not intended. This is contrary to the established Minnesota Supreme Court precedent clearly mandating that the general self-defense instruction be given in cases where the defendant claims the death was an unintended or accidental consequence of actions taken in defense of self.

Despite the renumbering, the district court stated that it believed CRIMJIG 7.06, the justifiable-taking-of-life instruction, was proper in light of *Hare*'s holding that CRIMJIG 7.06 (the former general self-defense instruction) was to be used in cases where death was not intended. The prosecutor agreed, noting that the comment to CRIMJIG 7.06 suggested that it would be appropriate because appellant did not claim that she intended to kill O.N.

When drafting jury instructions on self-defense, a district court "must use 'analytic precision.'" *Hare*, 575 N.W.2d at 833 (quoting *Sanders*, 376 N.W.2d at 201). The jury instructions "must not materially misstate the law." *Id.* Section 609.065, on which the justifiable-taking-of-life instruction is based, applies to the "*intentional* taking of the life of another." Minn. Stat. § 609.065 (emphasis added). The intentional taking of a life is only justified where the actor believes he or she, or another, is exposed to "great bodily harm or death." *Id.* In the state's request for the justifiable-taking-of-life instruction, the state acknowledged that appellant did not claim that she intended to kill O.N. in self-defense, she claimed the death was accidental. Because appellant did not claim that she intended to kill O.N., an instruction based on Minn. Stat. § 609.065 was inappropriate as it required the jury to find that appellant feared great bodily harm or death. This is a greater fear-of-harm requirement than that required under Minn. Stat. § 609.06, subd. 1(3), the law that applies when a person acts in self-defense but does not intend to take the life of another. The jury should have been instructed, consistent with appellant's defense theory, that her acts were justified if she used a reasonable level of force that she reasonably believed was necessary "in resisting . . . an offense against the person." Minn. Stat. § 609.06, subd. 1(3). The

instructions as given were erroneous because they misstated the law on self-defense.

▮ Though erroneous, a jury instruction does not merit a new trial if the error was "harmless beyond a reasonable doubt." *State v. Mahkuk*, 736 N.W.2d 675, 683 (Minn. 2007). "An error in jury instructions is not harmless and a new trial should be granted if it cannot be said beyond a reasonable doubt that the error had no significant impact on the verdict." *State v. Pendleton*, 567 N.W.2d 265, 270 (Minn. 1997).

▮ The state argues that the erroneous instruction was harmless because (1) the jury found that appellant committed a felonious assault and "the level of harm she allegedly feared was therefore irrelevant"; (2) appellant told the investigator that "she *did* fear death or great bodily harm"; and (3) the jury rejected appellant's defense-of-dwelling claim in which an assault by O.N. was defined as the infliction of bodily harm, or an act committed with intent to cause fear of bodily harm. We disagree.

The jury may also have rejected appellant's claim because the jury was instructed that appellant's acts were justified only if she feared death or great bodily harm. We cannot say whether the jury would or would not have believed that appellant's acts were justified if they were properly instructed under Minn. Stat. § 609.06, subd. 1(3), that appellant only had to have an actual and honest belief that she was in imminent danger of bodily harm, rather than death or great bodily harm. *See Devens*, 852 N.W.2d at 258 ("We have read Minn. Stat. § 609.06, subd. 1(3), to include . . . the defendant's actual and honest belief that he or she was in imminent danger of . . . bodily harm . . . ."). The jury may have believed appellant's statements to the investigators that she feared that O.N. was

going to hit her, but rejected her statements that she feared O.N. would greatly harm or kill her. Whether she acted reasonably in response to that fear is a question for the jury. *See State v. Glowacki*, 630 N.W.2d 392, 399 (Minn. 2001) (requiring jury to find that defendant believed that force was necessary and that the level of force used was reasonable to prevent the harm feared).

▮ The state also contends that the jury was properly instructed about defense of dwelling under Minn. Stat. § 609.065, and was instructed that an assault by O.N. would have been a felony. Therefore, the state argues, any error in the self-defense instruction would have been harmless because the jury was instructed that if appellant feared bodily harm and acted reasonably in defense of her home, her acts would be justified. For a killing to be justified under defense of dwelling, the jury must determine that (1) "the killing was done to prevent the commission of a felony in the dwelling," (2) "the defendant's judgment as to the gravity of the situation was reasonable under the circumstances," and (3) "the defendant's election to defend his or her dwelling was such as a reasonable person would have made in light of the danger to be apprehended." *State v. Carothers*, 594 N.W.2d 897, 904 (Minn. 1999). Appellant argued persuasively at oral arguments that, because the elements of self-defense are different from those of defense-of-dwelling, the jury may not have found appellant's acts to have been reasonable in defense of her dwelling, but the jury may have considered appellant's acts to have been reasonable in defense of her person, if the jury had been properly instructed on that defense.

We are cognizant of prior cases involving the use of the justifiable-taking-of-life instruction instead of the general self-de-

fense instruction that have not resulted in a new trial. *See Carridine*, 812 N.W.2d at 144 (concluding that the error was not prejudicial); *Hare*, 575 N.W.2d at 833 (concluding that the error was harmless because the jury understood that it should acquit the defendant if it believed he acted reasonably); *Robinson*, 536 N.W.2d at 3 (concluding that the instruction did not prejudice the defendant); *Marquardt*, 496 N.W.2d at 806 (concluding that the record did not support a claim of prejudice). However, due to the nature of appellant's claims—that she did not intend to stab O.N., but rather was attempting to stop his continued attack—and the other evidence presented at trial, we cannot conclude, beyond a reasonable doubt, that the erroneous jury instruction had no significant impact on the verdict. It is possible that the jury may have reached a different verdict if the jury had been properly instructed on self-defense.

## DECISION

Because we cannot conclude that the erroneous jury instruction was harmless beyond a reasonable doubt, we reverse appellant's conviction of second-degree felony murder and remand for a new trial. Because we remand for a new trial, we do not address appellant's additional claims of error.

**Reversed and remanded; motion denied.**